## Case No. 17,890.

WINTER v. IOWA, M. & N. P. RY. CO.

[2 Dill. 487; 7 N. B. R. 289; 6 West Jur. 562; 5 Chi. Leg. News, 74; 6 Alb. Law J. 358.] [1]

Circuit Court, D. Iowa.    Oct. Term, 1873.

RAILWAY COMPANY—ACTS OF BANKRUPTCY—COMMERCIAL PAPER — PREFERENCE — TRANSFER OF STOCK.

1. The provisions of the bankrupt act apply to railway corporations, and if they commit an act of bankruptcy they may be proceeded against under that act.

[Cited in Re California Pac. R. Co., Case No. 2,315; Re Southern Minn. R. Co., Id. 13,-188; New Orleans. S. F. & L. R. Co. v. Delamore, 114 U. S. 506, 5 Sup. Ct. 1011.]

2. It is not an act of bankruptcy, under section 39 of the bankrupt act, as amended July 14th, 1870 (16 Stat. 276), for a railway company to suspend and not resume payment of its commercial paper for a period of fourteen days.

3. Object and effect of the said amendment of July 14th, 1870, discussed and considered.

4. An executory agreement by a railway company to transfer certificates of its stock to a creditor is not an act for which the company can be thrown into bankruptcy.

5. Effect of transfer by the company of its stock, discussed.

This is a petition for revision under the second section of the bankrupt act. Louis C. Winter filed his petition in the district court, representing that he was a creditor of the above named railway company, and charging that the company had committed certain specified acts of bankruptcy, asked that it be declared a bankrupt. To this petition a demurrer was sustained by the district court; and it is that ruling that the petitioning creditor, Winter, now seeks to have revised.

Brown & Dudley, for petitioner for revision.

O. C. Howe and Phillips & Phillips, for railway company.

DILLON, Circuit Judge. The defendant is a railway corporation, organized under the general incorporation acts of the state of Iowa, and although not material, perhaps, to the determination of the legal questions now presented. counsel admitted that no part of its road was yet in operation.

The first ground of demurrer is that the defendant is not a "moneyed, business, or commercial corporation," within the meaning of the bankrupt act, and hence the provisions of that act do not apply to it. The provisions of this act shall apply to all moneyed, business, or commercial corporations, and joint stock companies. Section 37. Except as otherwise provided, corporations are within the bankrupt act (section 48) and in my judgment the purpose of congress in the use of the language above quoted from

section 37 was to include all corporations of a private nature, organized for pecuniary profit. Instead of undertaking to enumerate by name or description the various kinds of such corporations, language broad enough to include them, and which would exclude corporations of a public, civil, or municipal character, as well as those organized purely and strictly for religious, charitable, educational, and like purposes, was employed.

Railways fall within the designation of business or commercial corporations. Domestic or inter-state commerce, as well as foreign commerce, is contemplated by the constitution, and is habitually carried on by land as well as by water. Indeed, since the general introduction of railways, it is a fact known to all that navigation by river has relatively become of secondary importance, and the inland commerce and travel of the country are largely conducted and carried on by means of railways.

The question whether railroad companies are within the operation of the bankrupt act has several times been before the courts, and so far as the researches of counsel have extended, it has been uniformly decided that they were. Alabama & C. R. Co. v. Jones [Case No. 126], per Woods, Circuit Judge; Adams v. Boston, H. & E. R. Co. [Id. 47], per Shepley, Circuit Judge; approved and doctrine reaffirmed by Clifford, Justice, in Sweatt v. Boston, H. & E. R. Co. [Id. 13,-684.] Concurring in the views expressed in the opinions in these cases, it is not necessary to enter into an extended discussion of the question, or to repeat the arguments by which the conclusion reached is sustained.

It has been strongly urged that the practical consequences of holding this view are so serious, involving the stoppage or interruption of the operations of the road when thrown into bankruptcy, that such a construction should not be adopted. But where the language and intent of the legislature are plain, such arguments belong not to the judiciary. When the language is doubtful and the intent obscure, it is permissible to look at consequences and guide our decision by the aid thus supplied, but such is not, in my judgment, the case with respect to the question now under consideration.

Under the laws of the state, railroads may mortgage their property, or it may be subjected to the payment of their debts by proper judicial order, and in this manner sold and transferred, and really the only question is whether insolvent railway companies shall be made to pay their debts under the collection laws of the state, or under the mode provided by the bankrupt act.

There may be practical difficulties or embarrassments in the administration in bankruptcy of a railway company, owing to the nature of the property, and this might suggest reasons to congress for excepting such corporations from the act, or for providing a

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission. 6 Alb. Law J. 358, contains only a partial report.]

special mode of proceeding; but it affords no sufficient grounds for a forced construction of the present statute so as to exclude such corporations from the scope of its operation.

One of the acts of bankruptcy charged in the petition is the non-payment for more than fourteen days of the commercial paper of the company, viz., two negotiable promissory notes, executed by the railroad company to the petitioning creditor. The demurrer to this portion of the petition presents the question whether the suspension and non-payment by a railroad company for more than fourteen days of its promissory notes is an act of bankruptcy within the meaning of section 39 of the act as amended by the act of July 14th, 1870 (16 Stat. 276). As thus amended, the act reads as follows: That any person residing and owing debts as specified in the act, "who, being a banker, broker, merchant, trader, manufacturer, or miner, has fraudulently stopped payment, or who has stopped or suspended, and not resumed payment of his commercial paper within a period of fourteen days."

As originally framed, this portion of section 39 of the act had given rise to controversy in respect to the question whether any non-fraudulent suspension by a "banker, merchant, or trader," (the only classes named,) of commercial paper, no matter how lon·· continued, was an act of bankruptcy. Various opinions were entertained on this important practical question, and it was a question not free from doubt upon the phraseology of the original act. It was to settle this point that the amendment of July 14th, 1870, was enacted. Under the original act it is plain and undisputed that the person or corporation to be proceeded against under the clause must have been a banker, merchant, or trader. In making the amendment, congress did two things. First, it extended the provisions to "brokers," "manufacturers," and "miners," making six classes in all; and second, it provided in terms that the fraudulent stopping of payment by any person included in any one of these six classes, or the stopping or suspension and non-resumption of payment by any person included in any one of the enumerated six classes of his commercial paper for fourteen days, though not fraudulent, should be acts of bankruptcy. In other words, both clauses of the amendment extend to, and extend only to, persons belonging to one of the enumerated clauses. Mere suspension or non-payment of negotiable or commercial paper by any one else, as, for example, a farmer, or a mechanic, other than a manufacturer or trader, is not an act for which he may be thrown into bankruptcy; and, although I have read the argument in favor of the opposite view, made by a very

able and experienced bankruptcy judge, I cannot agree to its correctness. In re Hercules Assur. Soc. [Case No. 6,402], per Blatchford, J.

As a railroad company organized under the laws of Iowa is neither a banker, broker, merchant, trader, manufacturer, or miner, within the meaning of these words, as used in the bankrupt act, it follows on the supposition that the foregoing views are sound, that it cannot be proceeded against, in bankruptcy, for the mere suspension or non-payment, however long continued, of its commercial paper.

Another act of bankruptcy is alleged in the following language: "That the said railroad company, on the 7th day of August, 1872, being bankrupt and in contemplation of insolvency, did agree to issue to J. R. Mershon, its acting president, on demand, the certificates of stock of the said company, in the amount of $4,000, with the intent to give a preference to the said Mershon, and by such disposition of its property to defeat and delay the operation of the bankrupt act."

It is perhaps only necessary to observe that an unexecuted agreement by a company to transfer certificates of its stock is not an act for which it can be forced into bankruptcy.

Other acts of bankruptcy are charged to the effect that the company had actually transferred to creditors certificates of its stock, with intent to defeat or delay the bankrupt act by thus giving such creditors a fraudulent preference; and counsel have desired an opinion on the sufficiency of these counts of the petition.

The allegations are not sufficiently specific to warrant the expression of any very definite or final opinion upon the effect of the act charged. The rights of the stockholders are always subordinate to the rights of creditors, and it is difficult to see how the issue at par of the stock of the company not theretofore issued, in payment of the bona fide debts of the company could operate to the prejudice of creditors, or work a fraud upon them.

If, however, the stock was owned by the company as paid up stock lawfully acquired by it, it would probably be then regarded as ordinary property, and if disposed of by the authorized act of the corporation to creditors under circumstances to give them an illegal preference, no reason is perceived why it would not be an act for which the corporation could be proceeded against under the bankrupt law.

The order sustaining the demurrer to the petition of the creditor will be affirmed, and the cause remanded to the district court for further proceedings not inconsistent with this opinion. Affirmed.