## In re R. L. RADKE CO.

(District Court, N. D. California. May 31, 1911.)

No. 6,778.

1. BANKRUPTCY (§ 72*)—INVOLUNTARY PROCEEDINGS—"MONEYED, BUSINESS, OR COMMERCIAL CORPORATION."

A corporation engaged in leasing its own property and collecting rents therefor, with power to sue and be sued, to contract debts, and to dispose of its property, is a "moneyed, business, or commercial corporation," against which involuntary proceedings in bankruptcy may be had under Bankruptcy Act July 1, 1898, c. 541, § 4b, 30 Stat. 547 (U. S. Comp. St. 1901, p. 3423), as amended by Act June 25, 1910, c. 412, § 4, 36 Stat. 839.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 17; Dec. Dig. § 72.*

For other definitions, see Words and Phrases, vol. 8, p. 7724; vol. 2, p. 1301.

What persons are subject to bankruptcy law, see note to Mattoon Nat. Bank v. First Nat. Bank, 42 C. C. A. 4.]

2. BANKRUPTCY (§ 81*)—INVOLUNTARY PROCEEDINGS—PETITION—SUFFICIENCY.

A petition by a foreign corporation in an involuntary bankruptcy proceeding is not insufficient for failing to show compliance with the laws of the state where the bankruptcy proceeding is pending.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 81.*]

3. BANKRUPTCY (§ 84*)—PETITION—AMENDMENT—TIME FOR FILING.

An amended petition, filed within the time granted by an order extending the time for filing, will not be stricken for failure to file the order within the time allowed under the first order for filing the amended petition.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 126–129; Dec. Dig. § 84.*]

4. BANKRUPTCY (§ 81*)—INVOLUNTARY PROCEEDINGS—PETITION—SUFFICIENCY—LIMITATIONS.

A petition in involuntary bankruptcy, setting up a claim based upon a contract for labor and material furnished "within four years immediately before the filing of the petition herein," does not affirmatively show that the claim is barred by limitations.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 113–118; Dec. Dig. § 81.*]

5. BANKRUPTCY (§ 59*)—"ACT OF BANKRUPTCY"—SUFFERING EXECUTION LEVY.

Merely suffering an execution to be levied is not an act of bankruptcy within Bankruptcy Act July 1, 1898, c. 541, § 3a, 30 Stat. 546 (U. S. Comp. St. 1901, p. 3422), making it an act of bankruptcy to permit, while insolvent, any creditor to obtain a preference through legal proceedings; failure to discharge the lien of the execution before it becomes an indissoluble preference and an imminent probability that the lien will ripen into such preference being essential.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 81, 82; Dec. Dig. § 59.*

For other definitions, see Words and Phrases, vol. 1, p. 118; vol. 8, p. 7562.]

6. BANKRUPTCY (§ 81*)—INVOLUNTARY PROCEEDINGS—PETITION—SUFFICIENCY.

A petition in involuntary bankruptcy, stating that claims due the bankrupt were assigned without consideration, that suits have been com-

menced thereon by the assignee, and that the assignments were made to hinder and defraud creditors, is insufficient to exclude a theory that the assignment was made for purposes of collection.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 113–118; Dec. Dig. § 81.*]

7. BANKRUPTCY (§ 81*)—INVOLUNTARY PROCEEDINGS—PETITION—SUFFICIENCY —ACTS OF BANKRUPTCY.

A petition in involuntary bankruptcy showed an act of bankruptcy under Bankruptcy Act July 1, 1898, c. 541, § 3a, subd. 1, 30 Stat. 546 (U. S. Comp. St. 1901, p. 3422), by transferring assets to hinder or defraud creditors where it alleged that, within four months before the petition was filed, the bankrupt permitted its sole stockholders to appropriate portions of its property to their own use.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 59; Dec. Dig. § 81.*]

8. BANKRUPTCY (§ 81*)—INVOLUNTARY PROCEEDINGS—INTERVENING PETITION— SUFFICIENCY.

In an involuntary bankruptcy proceeding, the petition of an intervening creditor will be stricken, where he counts merely upon a judgment from which an appeal has been taken, and where the nature of the original claim is not set forth.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 81.*

In Bankruptcy. In the matter of the R. L. Radke Company. On demurrer to an amended petition and on motion to strike a petition in intervention. Demurrer overruled, and motion sustained.

Chas. W. Kitts, for petitioners Tablet & Ticket Co. and others.
R. H. Cross and Naylor & Riggins, for Thomas Mannix.
Robert H. Countryman, for R. L. Radke Co.

FARRINGTON, District Judge. [1] 1. It is alleged in the amended petition that the R. L. Radke Company is a commercial, moneyed, and business corporation, organized under the laws of the state of California for the purpose of buying, taking options upon, holding, improving, leasing, letting, selling, and dealing generally in real property; for the construction, maintenance, holding, leasing, and selling buildings; and also for buying, selling, and dealing in all kinds of goods, wares, and merchandise. Since November, 1906, it has been landlord of a building or buildings in San Francisco, and has engaged in renting stores and offices on its own property, and collecting rents therefor.

Section 4b of the Bankruptcy Act, as amended by the Act of 1910, provides that:

"Any moneyed, business, or commercial corporation, except a municipal, railroad, insurance, or banking corporation, owing debts to the amount of one thousand dollars or over, may be adjudged an involuntary bankrupt upon default or an impartial trial, and shall be subject to the provisions and entitled to the benefits of this act."

This amendment is adopted from the Act of March 2, 1867, c. 176, 14 Stat. 517. The provisions of that act (section 37) were expressly made applicable "to all moneyed, business, or commercial corporations and joint-stock companies."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

We cannot do otherwise than follow the definition of the terms "moneyed," "business," and "commercial" which were adopted and approved by the federal courts when called upon to interpret the earlier statute.

In Rankin v. Florida, A. & G. C. R. Co., 20 Fed. Cas. No. 11,567, in deciding that a railroad company is a "business corporation" within the meaning of that term as used in the bankruptcy act, the court declared that a corporation created for the purpose of carrying on any lawful business defined by its charter and clothed with power so to do, for the sake of gain, is a "business corporation," and amenable to the provisions of the bankruptcy act.

Bump, in the ninth edition of his work on Bankruptcy, says:

"The words, 'moneyed, business, or commercial corporations,' are intended to embrace all those classes of corporations that deal in or with money or property in the transactions of money, business, or commerce, for pecuniary gain, and not for religious, charitable, or educational purposes. The attempt to limit the word 'business' so as to be merely synonymous with trading would deprive it of its meaning beyond that included in the other words, 'moneyed' and 'commercial.' A trading corporation is a commercial corporation. The word 'business' has a broader meaning as applied to corporations."

Again, on page 778, the author says:

"Every corporation which transacts business for gain as its chief and ultimate purpose is, in a general sense, a business corporation."

To the same effect, see Sweatt v. Boston, H. & E. R. Co., 23 Fed. Cas. No. 13,684; Winter v. Railroad Co., 2 Dill. 487, Fed. Cas. No. 17,890.

The Radke Company was engaged in the business of leasing its own property and collecting rents therefor. It could sue and be sued; it contracted debts; it could assign and dispose of property; it was transacting business for gain as its chief business. The objection that it is not a corporation against which involuntary proceedings in bankruptcy may be had is not well taken.

[2] 2. Failure to set out in the petition that Tablet & Ticket Company, an Illinois corporation, has not complied with the provisions of the California Code, is not a ground of demurrer. Bernheim Distilling Co. v. Elmore, 12 Cal. App. 85, 106 Pac. 720.

[3] 3. December 19, 1910, Judge Bean made an order granting 20 days after December 14th within which to amend the petition. Notice that the demurrer to the original petition had been sustained was served December 14th. On the 24th day of the same month, and before the expiration of the 10 days allowed as of course by rule 17 within which to file the amended petition, this order was filed with the clerk. The amended petition and a second order, granting a further extension of one day, were filed January 4th. The last order was signed by Judge Van Fleet, and is dated January 3d. The only irregularity here is the failure to file the second order within the time allowed by the first; that is, on January 3d, instead of January 4th.

My attention has not been called to any rule which requires the amended petition to be stricken from the files for such a default.

[4] 4. It does not appear affirmatively on the face of the petition

193 F.—47

that the claim of the trustees for the creditors of J. Hammond & Co. is barred by the statute of limitations. The claim is based "upon a contract for labor and material furnished by the said J. Hammond & Co. to the said corporation at the latter's special instance and request, within four years immediately before the filing of the petition herein."

It is impossible for the court to say that the labor and materials were not furnished within 60 days before the original petition was filed. Therefore, in so far as it rests on this ground, the demurrer must be overruled. To uphold a demurrer for this cause, the complaint should show, not that the cause may be barred, but that it is barred. Palmtag v. Roadhouse (Cal.) 34 Pac. 111; Kraner v. Halsey, 82 Cal. 209, 22 Pac. 1137; Stringer v. Stringer, 93 Ga. 320, 20 S. E. 242; 13 Ency. Pl. & Pr. p. 203.

[5] 5. It is alleged that one Thomas Mannix recovered a judgment in the superior court for the city and county of San Francisco against the R. L. Radke Company, November 29, 1909, for $4,000, and "that said judgment has never been appealed from, vacated, or satisfied." September 12, 1910, execution was issued and placed in the hands of the sheriff and a certain debt due from W. H. Hurlbut was on the same day "levied upon, seized, and garnisheed, and said levy has never been released, and is still in full force and effect."

This transaction, as pleaded, does not constitute an act of bankruptcy. Perhaps counsel has read section 3a of chapter 3 of the Bankruptcy Act as it is quoted in his brief. The quotation should be:

"Acts of bankruptcy by a person shall consist of his having * * * (3) suffered or permitted, while insolvent, any creditor to obtain a preference through legal proceedings, and not having at least five days before a sale or final disposition of any property affected by such preference vacated or discharged such preference."

Merely suffering an execution to be levied is not an act of bankruptcy; failure to discharge the lien of the execution before it ripens into an indissoluble preference, and an imminent probability that the lien will ripen into such a preference, are absolutely essential here to constitute an act of bankruptcy under the terms of the statute above quoted.

It does not appear from the petition that any sale or final disposition of the property was attempted, or even thought of. The execution was levied September 12, 1910, less than two months and a half before the original petition was filed on November 22d. The lien could not be dissolved by merely initiating bankruptcy proceedings at any time prior to January 12, 1911. Section 67b; In re Vetterman (D. C.) 135 Fed. 443; In re Rome Planing Mill (D. C.) 96 Fed. 812.

[6] 6. It is alleged that the claims of the R. L. Radke Company against W. H. Stephenson, E. T. Ashby, and the Columbia Phonograph Company, General, were assigned to one F. Flannigan, without consideration; and that suit has been commenced on each claim by the assignee. It is stated that each assignment was made for the purpose of concealment, and to hinder, delay, and defraud creditors of the alleged bankrupt. But otherwise not a single fact is set out

from which we are justified in drawing the conclusion that the assignment was not made for the purposes of collection.

[7] 7. During four months immediately before the petition was filed, the Radke Company was in the enjoyment of an income of about $500 per month. It is alleged that the corporation had permitted R. H. Countryman to take and hold all these moneys in his own name. and to disburse the same for his own purposes. It is further alleged that this was done for the purpose of hindering and delaying the creditors of the corporation. In support of the last allegation, and as showing its intent, it is stated that the corporation has no treasury, bank, or place of deposit for its funds; that R. L. Radke and R. H. Countryman own all its capital stock; that since March 10th Countryman has taken and had the exclusive control and management of the company and its affairs; that the corporation owes more than $12,000, which it neglects and refuses to pay; that $3,556.72 is still due on a judgment obtained against the corporation by one Thomas Mannix November 29, 1909, for $4,116.50; that the corporation has no tangible or visible assets which can be seized upon execution; that the claims of the petitioners have long been due; that payment thereof has frequently been demanded and refused because of the alleged lack of funds; and that the company is insolvent and unable to pay its debts. It is said that ever since January, 1907, the company has been in receipt of a monthly income of more than $500, and that, prior to the four months immediately preceding the date when the petition was filed. the corporation suffered Countryman and Radke to appropriate portions of its property to their own use.

The attempt here is to set up an act of bankruptcy under chapter 3, § 3a(1) of the Bankruptcy Act:

"Acts of bankruptcy by a person shall consist of his having (1) conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, any part of his property with intent to hinder, delay, or defraud his creditors, or any of them."

The petition certainly shows that the income of the company has been transferred to Mr. Countryman; that this has hindered the creditors, and was so intended.

[8] 8. Thomas Mannix, an intervening creditor, has filed his petition herein, in which he relies upon the judgment above referred to. It is conceded that this judgment has been appealed from, and that the appeal is still pending. Respondent urges that the judgment is not a provable claim, and consequently Mannix is not a creditor within the meaning of the act, and that his petition must be stricken from the files. To this Mannix suggests that his claim was provable in itself before judgment was recovered, and, if the judgment be reversed, he will still remain a creditor. This may be true, but nowhere does he show the nature of his original claim. He counts merely upon a judgment which is on appeal, and therefore not final. In re Yates (D. C.) 114 Fed. 365.

It is unnecessary for me to decide whether Mannix shows himself entitled to intervene or not. His petition is a duplicate of the original petition filed by him November 17, 1910, to which Judge Bean

has already sustained a demurrer. I cannot review Judge Bean's decision. The petition filed January 9, 1911, by Thomas Mannix will ·be stricken from the files. The demurrer to the petition of the Pacific Auxiliary Fire Alarm Company et al. is overruled, and 20 days allowed within which to answer.