[No. 2404]

## IN THE MATTER OF THE APPLICATION OF LOUIS PIEROTTI FOR A WRIT OF HABEAS CORPUS.

[184 Pac. 209]

1. GAMING—NICKEL-IN-THE-SLOT MACHINE GAMBLING DEVICE.

Nickel-in-the-slot machines, by which a player has a chance of losing the amount he plays or receiving a larger amount, are well-known gambling devices.

2. GAMING—NUISANCE—GAMING-HOUSES NUISANCES AT COMMON LAW.

While at common law gaming or gambling was not itself unlawful, and is not now a crime unless so made by statute, yet at common law public gaming-houses were nuisances, not only because they were deemed great temptations to idleness, but because they were apt to draw together numbers of disorderly persons.

3. LOTTERIES—NICKEL-IN-THE-SLOT MACHINES, THOUGH GAMBLING DEVICES, NOT LOTTERIES.

A nickel-in-the-slot machine, although a gambling device and expressly brought within the purview of the earlier gambling statutes, is not a lottery, within Const. art. 4, sec. 24, declaring that no lotteries shall be authorized in the state; and hence the state legislature may, as it did in Stats. 1915, except slot machines for the sale of cigars and drinks and no backplay allowed.

4. CONSTITUTIONAL LAW—WHETHER ALLOWING NICKEL-IN-THE-SLOT MACHINES INJUDICIOUS QUESTION FOR LEGISLATURE.

Whether a law allowing nickel-in-the-slot machines to a limited extent is unwholesome is a question for the legislature or the people, and not the courts.

ORIGINAL PROCEEDING.  Application of Louis Pierotti for a writ of habeas corpus.  **Writ issued.**

*Norcross, Thatcher & Woodburn,* for Petitioner:

Sections 6494 and 6495 of the Revised Laws do not embrace or include the device or slot machine mentioned in the complaint.  The acts and things which petitioner is charged with having committed are not prohibited under the laws of the State of Nevada, but are specifically excluded from the operation of the law denouncing and making criminal the use of slot machines.  Stats. 1915, p. 462.

The word "lottery," as used in section 24, article 4,

Constitution of Nevada, and section 6494 of the Revised Laws, does not contemplate a slot machine.

Legislative and executive construction has been adopted and acted on with the acquiescence of the people for many years, which, in the absence of any imperative reason for the contrary, should be accepted as a correct interpretation of the constitutional provision. Bruce v. Schuyler, 4 Gilman, 221; Comstock v. Cover, 35 Ill. 470; People v. Loewenthal, 93 Ill. 191; People v. Board, 100 Ill. 495; People v. Fidelity & Casualty Co., 153 Ill. 25; People v. Olson, 92 N. E. 157; Worthington v. District Court, 37 Nev. 244; State v. Cole, 38 Nev. 215; State v. Brodigan, 35 Nev. 38; State v. Glenn, 18 Nev. 34; State v. Grey, 21 Nev. 378.

"Questions relating to the policy, wisdom and expediency of the law * * * are not for the courts to determine." Ex Parte Boyce, 27 Nev. 299, 65 L. R. A. 47, 1 Ann. Cas. 66; Gibson v. Mason, 5 Nev. 283.

Criminal statutes must be strictly construed. In their interpretation, words in common use are to be construed in their natural, plain and ordinary signification. 36 Cyc. 1114; Shulthis v. MacDougal, 162 Fed. 331; Austin v. Cahill, 88 S. W. 542; Ex Parte Deidesheimer, 14 Nev. 311; Ex Parte Davis, 33 Nev. 316.

*L. B. Fowler,* Attorney-General; *Robert Richards,* Deputy Attorney-General; *L. D. Summerfield,* District Attorney, and *W. M. Kearney,* Deputy District Attorney, for Respondent:

The writ should be discharged and the petitioner remanded the custody of the law. Slot machines are "lotteries" within the meaning of the constitution and the statutes. All questions involved in this proceeding have been finally settled by the decisions of this court. Ex Parte Blanchard, 9 Nev. 104; State v. Overton, 16 Nev. 136.

The statute has enlarged upon the term "lottery," and kindred schemes and devices. Rev. Laws, 6494, 6495.

"Calling it, by name, a 'slot machine,' instead of a

'lottery machine,' does not vary its character." Loiseau v. State, 22 South. 138; Paulk v. Jasper Land Co., 22 South. 495; City of New Orleans v. Collins, 27 South. 532; Johnson v. State, 34 South. 1018; Meyer v. State, 37 S. E. 96.

No city ordinance or legislative statute can make lawful the use of any lottery device, in the face of the constitutional inhibition against lotteries. Barry v. State, 45 S. W. 571.

By the Court, SANDERS, J.:

The thing or device denominated in the complaint "a lottery" is a "nickel-in-the-slot machine." The act complained of is that the petitioner wilfully and unlawfully set up a nickel-in-the-slot machine in his place of business at 128 Commercial Row, in the city of Reno, Nevada.

The offense charged, with the word "lottery" entirely removed therefrom, would be a public nuisance.

Every place wherein any gambling game or device is kept, or any article, apparatus, or device useful therefor is kept, "shall be a public nuisance." Rev. Laws, 6561.

1. Nickel-in-the-slot machines have a well-defined meaning in criminal law.

"Slot machine by which the player has a chance of losing the amount he plays is a * * * gambling device." Territory v. Jones, 14 N. M. 579, 99 Pac. 338, 20 L. R. A. (N.S.) 239, and note, 20 Ann. Cas. 128, and note; 12 R. C. L. pp. 721, 726, 728, 729.

It would be idle for us to deny that chance is the material element in the operation of such machines. The player hopes to get cigars or drinks for nothing. The dealer hopes chance will save him from giving something for nothing. If it were not for the chance to win cigars or drinks, the customers of the dealer would not use the machine. Lang v. Merwin, 99 Me. 486, 59 Atl. 1021, 105 Am. St. Rep. 293.

Since the year 1901, in this jurisdiction, nickel-in-the-slot machines played for cigars and drinks (now, per-

force of the statute, nonintoxicating drinks, Stats. 1919, p. 1) are expressly brought within the purview of gambling statutes. Stats. 1901, c. 13, 1905, c. 52, 1907, c. 212, 1908–1909, c. 210, 1913, c. 149, and 1915, cc. 30, 284.

2. At common law "gaming" or the synonymous term "gambling," was not in itself unlawful, and is not now eo nomine a crime, unless so made by statute. 12 R. C. L. 708. "But at common law all public gaming-houses were nuisances, not only because they were deemed great temptations to idleness, but also because they were apt to draw together great numbers of disorderly persons." Scott v. Courtney, 7 Nev. 419.

3. Our legislature, in the exercise of its powers over the policy and morals of the people, found it desirable to declare every place wherein any gambling game or device is kept, or any article, apparatus, or device useful therefor is kept, to be a public nuisance. But in 1915 the legislature (Stats. 1915, c. 284), in legislating upon the subject of gambling, found it desirable and expedient to modify the stringent provisions of the antigambling law by inserting therein a proviso:

"Provided, however, that nothing in this paragraph shall be construed as prohibiting social games played, only for drinks and cigars served individually, or for prizes of a value not to exceed two dollars, nor nickel-in-the-slot machines for the sale of cigars and drinks and no playback allowed."

The paragraph referred to in the proviso reads:

"Every person who shall play at any game whatsoever, other than those hereinabove excepted, for money, property, or gain, with cards, dice or any other device which may be adapted to or used in playing any game of chance, or in which chance is a material element, or who shall bet or wager on the hands or cards or sides of such as do play as aforesaid, shall be deemed guilty of a felony."

It is obvious that the purpose of the proviso was to exempt players at such machines from prosecutions for a felony, and also to declare places wherein such gam-

bling devices are kept to be unlawful places. If it was competent for the legislative body to pass the act declaring every place wherein a gambling device which is adapted and used for the purpose of gambling to be a public nuisance, it must be conceded that it was competent for that body by the adoption of the proviso to make the place, which but for the statute would be a public nuisance, a lawful place. It is true as a general proposition that courts will not hold conduct to constitute a nuisance where authority therefor exists by virtue of legislative enactment. This rule is supported by abundant authority. 20 R. C. L. 500 and note. But it must be observed that this rule is subject to the limitation above indicated, that it must be competent for the legislative body in the first instance to declare the thing or place a nuisance. This is a matter for judicial determination and brings us to the real and only point to be determined in this proceeding. Has the legislature, by the adoption of the proviso above quoted, sanctioned a lottery?

Unless gambling devices, such as nickel-in-the-slot machines, may be said to be brought within the constitutional inhibition (art. 4, sec. 24)—"No lotteries shall be authorized by this state"—the legislature has not exceeded its power in adopting the proviso in question. A lottery is defined by statute to be any scheme for the disposal or distribution of property, by chance, among persons who have paid or promised to pay any valuable consideration for the chance of obtaining such property, or any portion of it, * * * whether called a lottery, raffle or gift enterprise, or by whatever name the same may be known. Rev. Laws, 6494. It would seem from this comprehensive language to have been the intention of the legislature to prevent every pecuniary transaction in which chance is a material element. In this connection it may be said that we are entirely in accord with what is said in the case of State v. Overton, 16 Nev. 136, an able and exhaustive discussion of the subject of lotteries.

There is no doubt that nickel-in-the-slot machines amount to the disposal of property by chance, but whether or not they amount to setting up, proposing or drawing a lottery as the word "lottery" is used in the constitution—"No lottery shall be authorized by this state" (Const. art. 4, sec. 24)—is an entirely different question. There can be no doubt of what was meant by this language of the constitution, and it clearly referred to the class of enterprises which had formerly been lawful if authorized by law, and criminal if unauthorized. People v. Reilly, 50 Mich. 384, 45 Am. Rep. 47.

It is contended by the state that the word lottery, as defined by the statute, expresses both the intention of the framers of the constitution and the legislature to prohibit the enactment of any law that sanctions the disposal of property by chance, "by whatever name the same may be known."

"It is a safe and necessary rule to construe criminal statutes so as to include what is fairly and reasonably within the legitimate scope of the language, but not to include what is not within the language merely because it partakes of similar mischievous qualities." People v. Reilly, supra.

It is true that in common parlance, in a dictionary sense and the statutory definition, the word "lottery" may be a game. But the legislature of this state, since the date of its organization as a state, has plainly drawn a distinction between lotteries and unlawful gaming. This distinction is universally recognized as being within the power of such bodies to make in the absence of any constitutional inhibition. Both are offenses against the law, and both are offenses against public policy. Temple v. Commonwealth, 75 Va. 901. The reason for the distinction is not difficult to find. A lottery is prohibited by the constitution as a public nuisance—a crime against the good order and the economy of the state. Rev. Laws, 6561. It is a crime that goes to the destruction of the morals of the people and paralyzes the industrial energy of society. From the language employed in the constitution it is evident that this was the understanding of its

framers. Ex Parte Blanchard, 9 Nev. 104. "It is this extensive reach, and not merely its speculative purposes, which makes lottery gambling so dangerous" as to be a proper subject for constitutional prohibition. The reason for the distinction is forcibly expressed by the highest court of the land in this language:

"The suppression of nuisances injurious to public health or morality is among the most important duties of government. Experience has shown that the common forms of gambling are comparatively innocuous when placed in contrast with the widespread pestilence of lotteries. The former are confined to a few persons and places, but the latter infests the whole community; it enters every dwelling; it reaches every class; it preys upon the hard earnings of the poor; it plunders the ignorant and simple." Phalen v. Commonwealth, 8 How. 163, 12 L. Ed. 1030.

It is true that lotteries and unlawful gaming partake of the same mischief. They belong to the same family. Chance is the material element in both. The legislature is prohibited from legislating upon one and permitted by virtue of its inherent powers to legislate upon the other as the occasion arises. This for the reason of the wide distinction or contrast between the vice of lotteries which infests the whole community and the mischief or nuisance of gambling which is generally confined to a few persons and places. To say that the legislature is without power to legislate upon the subject of gaming is to set at naught the basic power of the legislative branch of the government.

But it is urged that a nickel-in-the-slot machine for the sale of cigars and drinks is a gambling scheme or device for the disposal or distribution of particular classes of property, and is therefore brought within the statutory definition of lotteries, regardless of gambling statutes. Conceding this to be true, the question here is: Had the legislature the power to make such devices the subject of separate and distinct legislation because of their gambling qualities? The legislature derives its power to legislate upon such gambling devices from its

inherent authority over the morals and policy of the people, and not from the statutory definition of lotteries.

The fact that the legislature had, by the proviso in question, sanctioned the adaptation and use of nickel-in-the-slot machines to stimulate the disposal of cigars and drinks by appealing to and arousing the gambling propensities of visitors to places where such devices are set up, does not change the character of the device from a gambling to a commercial transaction. But for its being a "gamble" customers would not use it. Gambling is the same yesterday, today, and forever. It is for the legislature, and not courts, to draw the line of demarcation between the varied kinds. It is not the province of courts to confound by construction what the legislature has made clear.

It is further argued that it is "automatic gambling," and easily distinguished from other forms of gambling, such as those games excepted from the operation of the antigambling law — poker, stud-horse poker, five hundred, whist, and solo, where the deal alternates. This we regard as being a distinction without a difference, and an admission that such machines are gambling devices and not lotteries, unless it be said that the excepted games are different from automatic gambling devices, in that skill is the material element in such games and not chance. This is absurd. Any game played with cards in which the hand at cards depends on a dealing with the face down is a game of chance. 12 R. C. L. 717.

It is argued that the language of the proviso, "for the sale of cigars and drinks," means "sales" as defined by law. There is no such thing as a "sale" by chance. To say that the restriction placed on the player in the proviso, "no playback allowed," applies to "sales" or to "lotteries," is impracticable, if not unreasonable.

It is insisted by counsel for the state that calling the scheme by name a slot machine instead of a lottery machine does not change its character. Neither does the

fact that the proviso limits its operation and restricts the player exert any influence in determining its character. In support of this contention counsel quote extensively from the opinion of this court in the case of State v. Overton, supra. In that case the court had under review a special statute that clearly sanctioned a lottery; but the court, in addressing itself to the point that all schemes or devices in which chance is a material element are lotteries, did not see fit to include in its illustrations automatic gambling games, which we assume to have been then in operation in this state, such as faro, roulette, keno, and such gambling devices. It is fair to presume that had the court been of the opinion that the word "lottery" included these devices it may have properly brought them within the purview of the constitutional inhibition against lotteries. If these devices are lotteries, so are slot machines.

We are also referred to the case of Loiseau v. State, 114 Ala. 34, 22 South. 138, 62 Am. St. Rep. 84. In that case the indictment contained three counts: First, that defendant did unlawfully set up, carry on, or operate a device of chance, to wit, a slot machine; second, that he did unlawfully sell chances in a device of chance, to wit, a slot machine; and third, that defendant did set up, or was concerned in setting up or carrying on, a lottery, to wit, a slot machine. The defendant was convicted upon the first two counts. It will be observed that the indictment itself makes a distinction between gambling and lotteries, and the court in its opinion plainly recognizes the distinction by the use of this language:

"The evidence is the case authorized a conviction under either the first or second count of the indictment, and we are not prepared to say that he might not have been properly convicted under the third count."

The other cases cited by the state are taken from those jurisdictions where the word "lottery," as used in the organic law or statute, is extended by construction to all the various forms of gambling. The effect of these

decisions is to say that gambling is per se a public nuisance, and therefore is brought within the constitutional and statutory prohibitions against lotteries.

4. It is useless to continue this discussion. The law in question may be considered unreasonable and unwholesome, but the motive that prompted the legislature in exempting from the operation of the antigambling law slot machines of the character here discussed is no concern of ours. It is a matter for the people or their representatives.

The criminal complaint in this case charges the petitioner with the crime of contriving, operating, setting up, proposing, and drawing a lottery, to wit, a nickel-in-the-slot machine for the sale of cigars and drinks, and no playback allowed.

Entertaining the views hereinabove expressed, we are clearly of the opinion that the complaint does not state a public offense, and the petitioner is entitled to be discharged from arrest on habeas corpus.

Let the writ issue.