### In re DEAUVILLE, Inc.
### No. 444.

District Court, D. Nevada.

Oct. 15, 1931.

Painter & Withers, of Reno, Nev., for petitioners.

Fernand de Journel, of Fresno, Cal., for alleged bankrupt.

NORCROSS, District Judge.

The petition of four creditors of the alleged bankrupt whose claims aggregate an amount of $655.64, was filed in this court September 5, 1931. Among other allegations the petition contains the following: "That Deauville, Inc. is a corporation organized and existing under and by virtue of the laws of the State of Nevada, with its principal place of business in Reno, Nevada, at No. 43 West First Street, at which place it has for six months last past, or the greater portion thereof, carried on business as a restaurant, gambling establishment and cafe."

The alleged act of bankruptcy reads: "That the said bankrupt is now and was on the 3rd day of September, 1931, insolvent. That on said date, * * * the District Court of Washoe County, State of Nevada, appointed a receiver to take charge of the property and assets of said bankrupt."

To the petition a motion to dismiss was filed on behalf of the alleged bankrupt by its president and a receiver appointed by the state court, and an answer "in support of their motion * * * and in answer to said petition" was also filed.

The motion to dismiss questions the jurisdiction of the court "on the ground that the respondent is not a moneyed, business or commercial corporation"; that the petitioning creditors "are not sufficient in numbers, and their claims are not sufficient in amount to comply with the provisional requirements of the Bankruptcy Act." The motion concludes: "That the said petition fails to allege and to show that the receiver of the property and assets of the

corporation respondent appointed by the court of the State of Nevada, was so appointed upon the grounds of insolvency, but that in truth and in fact, said receiver was appointed for the preservation of its assets; that the said corporation respondent did not thereby, or at all, commit any act of bankruptcy."

The answer alleges the filing of a petition for the appointment of a receiver in the state court on the 1st day of September, 1931, and the appointment of a receiver on the same day, copies of the petition for and order appointing a receiver being attached to and made a part of the answer. The answer further alleges:

"That the said corporation is not a commercial, moneyed corporation, and is not engaged principally, or at all, in commercial pursuits, or in any moneyed business, but is solely engaged in gambling, and that is to say:

"It has on its premises for its use, but not for sale, wheels of fortune, roulettes, card tables, dice tables, games of chance, and all other devices, appliances, and paraphernalia necessary to carry on their said gambling enterprise * * *; that for an attraction, and for no other purpose, the said corporation permits the dancing of its gambling patrons, and the serving to them of refreshments, all of which is done, not for profit, but on the contrary, at a loss, and as an inducement ancillary to the gambling enterprise. * * *"

The answer further alleges that "the petitioners are not, nor is either of them, creditors, or a creditor in the manner or form alleged in their said petition. * * *"

It is further alleged in the answer: "That it is represented in the petition * * * that * * * the Second Judicial District Court of the State of Nevada, * * * appointed a receiver to take charge of the property and assets of the said corporation defendant, then insolvent, but that it does not appear from the complaint filed in the said District Court, or from the order of the said District Court, * * * that the corporation was then, nor that it is now, insolvent, nor does it appear * * * that the appointment of said receiver was made upon the ground of insolvency, but that, on the contrary, it appears therefrom that the said appointment of said receiver was made for the purpose of preserving the ssets * * * from waste, by reason of

harassing litigation initiated by small creditors. * * *"

The order appointing the receiver makes no mention of the reason for such appointment, other than, "Upon reading the verified complaint * * * and upon hearing said counsel for said plaintiff."

The complaint upon which the receiver was appointed is quite lengthy, but for the purposes of this case the following allegations only need be noticed: "That the corporation is capitalized in the sum of $250,000.00, divided into 2500 shares of the par value of $100.00 per share; that there is issued and outstanding 1315 shares. * * * That the said defendant corporation is the owner of a lease of the premises where it is now carrying on business; that the said lease is for the term of nine and one-half years, at a rental of $175.00 per month for the next ensuing four and one-half years, and * * * not to exceed $300.00 per month for the remaining five years; that the said lease is very valuable, and said corporation * * * was offered the sum of $25,000.00 for the said lease. That the said defendant corporation has expended the sum of $28,000.00 in the improvement of the premises; that the said improvements are attached to the land; that the furniture and fixtures in the said premises have cost to the said corporation, and are now of the value of $60,000.00; * * * that the total expenditures of the said corporation are approximately $100,000.00. That the creditors * * * are of two classes, * * * large creditors, and * * * small creditors; * * * that the total of their (small creditors) claims, collectively, is approximately $2500.00."

The concluding paragraph of said complaint reads: "That the plaintiff herein is partly conversant with all of the details of the assets, property, and business of the corporation, and also with the amounts of its obligations to all of its creditors; that said plaintiff verily believes that said corporation has assets and property sufficient and adequate, not only to pay all its debts and obligations incurred in starting its business, but has also sufficient assets and property to carry on said business, and to leave a large surplus, sufficient to pay all its stockholders, but that the said assets and property of the said corporation, and all the investments heretofore made by it, are now in great danger of being wasted and lost as hereinbefore set forth, unless a receiver

is appointed forthwith of the assets and property of the said corporation, to take possession thereof, and preserve the same for the benefit of all of its creditors, large and small, and of the plaintiff herein."

The complaint does not contain an allegation or statement of the approximate total amount of the so-called "large creditors." The prayer of the complaint, in addition to the appointment of a receiver, is inclusive of relief as follows: "That upon the return of the said inventory and accounting to this court, an inquiry may be made of the management and conduct of the Board of Directors of the said corporation, and if it appears that the said corporation has become insolvent, that an order may be made by the said court for the winding up and dissolution of the said corporation, and the distribution of its assets, within a reasonable time, to its creditors and stockholders."

At the time of the hearing upon the motion to dismiss, counsel for petitioners filed a supplementary petition upon the part of five additional alleged creditors; the claims in the aggregate amounting to $519.88. Upon the filing of this supplementary petition it was not further contended that the petition was deficient in number of creditors or in amount.

■■ The main contention in support of the motion to dismiss is based upon the ground that the alleged bankrupt is a corporation the principal business of which is the conducting of a gambling resort, and, therefore, should not be regarded as a corporation subject to adjudication in bankruptcy.

The Federal Bankruptcy Act provides:

"Bankrupts; who may become. (a) Any person, except a municipal, railroad, insurance, or banking corporation, shall be entitled to the benefits of this title as a voluntary bankrupt.

"(b) * * * any moneyed, business, or commercial corporation, except a municipal, railroad, insurance, or banking corporation, owing debts to the amount of $1,000 or over, may be adjudged an involuntary bankrupt. * * *" 11 USCA § 22.

The original Bankruptcy Act of 1867 (14 Stat. 517, 535, § 37) provided that any "moneyed, business, or commercial corporations" could be adjudged a bankrupt. The act was amended in 1898 so that its provisions were limited to corporations "engaged principally in manufacturing, trading, printing, publishing, or mercantile pursuits." 30 Stat. 547, § 4. The act was amended in 1910 (36 Stat. 839, §§ 3, 4) to read as quoted supra, and with certain exceptions corresponds to the original act of 1867.

Is the alleged bankrupt a "moneyed, business, or commercial corporation" within the meaning of the statute? This question must be answered with the aid of decisions construing the act as it existed prior to the amendment of 1898, and subsequent to the amendment of 1910. That it is not a commercial corporation may be readily conceded.

The compiler's note to the section as it appears in 11 USCA p. 264, referring to the effect of the decisions construing the act of 1867, as it existed prior to the amendment of 1898, says: "In discussing this provision it was said that such language was intended to include all corporations of a private nature organized for pecuniary profit." Citing a number of cases.

Apparently the first case in which the amendment of 1910 was considered was that of In re Radke Co. (D. C.) 193 F. 735, 737. Judge Farrington of this district, sitting in the District Court of California, in the opinion in that case said:

"We cannot do otherwise than follow the definition of the terms 'moneyed,' 'business,' and 'commercial' which were adopted and approved by the federal courts when called upon to interpret the earlier statute. * * *

"Bump, in the ninth edition of his work on Bankruptcy, says: 'The words, "moneyed, business, or commercial corporations," are intended to embrace all those classes of corporations that deal in or with money or property in the transactions of money, business, or commerce, for pecuniary gain, and not for religious, charitable or educational purposes. The attempt to limit the word "business" so as to be merely synonymous with trading would deprive it of its meaning beyond that included in the other words, "moneyed" and "commercial." A trading corporation is a commercial corporation. The word "business" has a broader meaning as applied to corporations.'

"Again, on page 778, the author says: 'Every corporation which transacts business for gain as its chief and ultimate purpose is, in a general sense, a business corporation.' * * *

"The Radke Company was engaged in the business of leasing its own property and

collecting rents therefor. It could sue and be sued; it contracted debts; it could assign and dispose of property; it was transacting business for gain as its chief business. The objection that it is not a corporation against which involuntary proceedings in bankruptcy may be had is not well taken."

In the more recent case of In re Dairy Marketing Ass'n of Ft. Wayne, Inc., 8 F. (2d) 626, 628, Judge Slick of the District Court of Indiana said: "In view of these decisions, it would seem that Congress intended, when it used the words 'moneyed, business, or commercial corporations,' to include such corporations as were engaged in enterprises for profit, and did not intend to include charitable, fraternal, educational, literary, or nonprofit co-operative marketing associations, none of which are conducted for profit to themselves or to their members as such." The opinion also cites the Radke Co. Case, and says: "And the court in this case holds that a corporation transacting business for gain as its chief and ultimate purpose is a business corporation."

There can be no serious question from the pleadings that the alleged bankrupt was a corporation organized for pecuniary profit. Like any other private corporation organized for such purpose, it is subject, upon a proper showing, to adjudication as an involuntary bankrupt, unless there be merit in the contention that because its principal business is that of conducting a gambling resort the court should not entertain a petition of creditors because of the character of its business. The court's attention has not been directed to a case so holding, nor, as we think, supporting the principle sought here to be applied. The Bankruptcy Act makes no exceptions as to what corporations may become a voluntary bankrupt, but does provide what character of corporations may be adjudged an involuntary bankrupt. If in fact the court should not take cognizance of a proceeding in bankruptcy merely because the respondent is engaged in a gambling enterprise, even though licensed under the laws of the state so to do, then doubtless such respondent is entitled to plead such exception as a reason why creditors may not have the advantage of the provisions of the Bankruptcy Act.

By an act of the Legislature of the State of Nevada, approved March 19, 1931 (Nev. Stats. 1931, p. 165, c. 99), "gambling games, and gambling devices" may be licensed. When so licensed, the conducting of the same is not unlawful. Section 2 of the act provides: "Any person, firm, association or corporation desiring to conduct, operate, or carry on any gambling game, * * * shall, upon proper application * * *, be issued a license," etc.

In the case of Ex parte Pierotti, 43 Nev. 243, 184 P. 209, the Supreme Court of the state said:

"At common law 'gaming,' or the synonymous term 'gambling,' was not in itself unlawful, and is not now eo nomine a crime, unless so made by statute. 12 R. C. L. 708. But at common law all public gaming houses were nuisances. * * *' Scott v. Courtney, 7 Nev. 419.

"Our Legislature, in the exercise of its power over the policy and morals of the people, found it desirable to declare every place wherein any gambling game or device is kept, or any article, apparatus, or device useful therefor is kept, to be a public nuisance. * * * If it was competent for the legislative body to pass the act declaring every place wherein a gambling device which is adapted and used for the purpose of gambling to be a public nuisance, it must be conceded that it was competent for that body by the adoption of the proviso to make the place, which but for the statute would be a public nuisance, a lawful place. It is true as a general proposition that courts will not hold conduct to constitute a nuisance where authority therefor exists by virtue of legislative enactment. This rule is supported by abundant authority. 20 R. C. L. 500, and note. * * * To say that the Legislature is without power to legislate upon the subject of gaming is to set at naught the basic power of the legislative branch of the government."

While the Supreme Court of Nevada has uniformly held that notes and other obligations where the consideration was a so-called gambling debt were unenforceable, even where the debt was incurred in the play of a licensed game (Scott v. Courtney, supra; Evans v. Cook, 11 Nev. 69; Burke & Co. v. Buck, 31 Nev. 74, 99 P. 1078, 22 L. R. A. (N. S.) 627, 21 Ann. Cas. 625; Menardi v. Wacker, 32 Nev. 169, 105 P. 287, Ann. Cas. 1912C, 710), no such question is presented in this case.

We are here dealing with a corporation engaged in a gambling enterprise upon a comparatively large scale. Clearly it is in the business for pecuniary profit. So long as gambling may be conducted under li-

cense the state recognizes it as a business which a person or corporation may lawfully carry on. From the answer of the respondent it appears that the corporation has acquired a valuable interest in real property in the form of a lease. It has expended several thousands of dollars in improvements upon the leased premises. It would appear to have a comparatively large investment in furnishings of various sorts exclusive of gambling paraphernalia. In the mere matter of preparation for the opening of a gambling resort it has expended large sums of money for labor, material, and supplies, and contracted debts in connection therewith having no relationship to what is ordinarily known or understood as gambling debts.

As the Bankruptcy Act was passed for the benefit of creditors of a bankrupt as well as debtors who may voluntarily apply for the relief it affords, we see no reason why creditors of a corporation engaged in any enterprise for pecuniary profit should be denied a relief afforded creditors generally merely because the character of the debtor's business is one not usually countenanced by statute. Certainly Congress did not intend to place corporations engaged in a business of this character as being in a favored class, such that when creditors who have performed labor and furnished merchandise, materials, and supplies in the ordinary course of business, apply for an adjudication in bankruptcy, the debtor may say, "No, my assets may not be taken in such manner to pay in part my debts because of my iniquity." The contention that respondent is not subject to an adjudication in bankruptcy because of the character of the business in which it is engaged is without merit.

The contention that the petition fails to state an act of bankruptcy committed by respondent because it is not alleged that a receiver was appointed because of insolvency is without merit. If it had been the intention of Congress to provide that a corporation may be adjudged a bankrupt only in case a receiver was appointed because of insolvency, it would have been a very simple matter to have clearly so provided. Receivers are frequently appointed for reasons other than insolvency. A corporation, however, may be insolvent at the time a receiver is appointed, and the appointment based on some other reason. It is this situation which Congress had in view in the enactment in question.

The allegation of insolvency is not specifically denied by respondent, but no question has been raised in respect to the answer, considered in its entirety, being in effect a denial of that allegation. The court will so consider the answer as presenting that issue for determination upon trial, unless the sufficiency of the answer is formally challenged.

The motion to dismiss the petition is denied.