D. H. JOHNSTON AND M. E. WARD, Appellants, v.
MAURICE L. DeLAY, ELSA MAY DeLAY, Hus-
BAND AND WIFE, WILLIAM DUNN, RUTH WAL-
LACE D U N N, HUSBAND AND WIFE, ET AL.,
RESPONDENTS.

No. 3413

May 4, 1945. 158 P. 2d 547.

2

4

*Morse & Graves,* of Las Vegas, for Appellants.

*Edgar B. Hervey,* of San Diego, Calif., *J. R. Lewis,* of Las Vegas, and *Merwyn H. Brown,* of Winnemucca (*Henry F. Walker,* of Los Angeles, Calif., of counsel), for Respondents.

## OPINION

By the Court, ORR, J.:

In the district court the plaintiffs instituted an action asking that they be given possession of certain property situate in Clark County, Nevada, and for damages in the sum of $10,000 for the alleged wrongful withholding of said property, and, at the instance of plaintiffs, the trial court appointed a receiver of said property. Said receiver duly qualified and took possession of the premises in question on February 20, 1942, and has been in such possession since said date. Defendants counterclaimed in the action and asked damages in the sum of $10,000, the sum being later increased to $20,000 through amendments permitted by the court.

Plaintiffs Johnston and Ward are the owners, as tenants in common, of the property involved in this action, each owning an undivided one-half interest therein. On September 19, 1941, an instrument in writing was executed by and between Ward and Maurice L. DeLay, wherein the said Ward leased to DeLay the property referred to. Ward and DeLay, after certain negotiations, arrived at an agreement relative to the leasing of the property, and the terms and conditions of the said lease were dictated to Mrs. Perle Brown, who typed it, and it was later signed by M. E. Ward, as lessor, and

Maurice L. DeLay, as lessee. The lease was not signed by plaintiff Johnston; neither was Mrs. Johnston apprised of the deal which had been made by Ward and DeLay, before its execution, and it nowhere appears that at any time she gave her assent thereto. The lease reads:

"Lease

"127266

"This Indenture made this 19th day of September, 1941, between M. E. Ward, of Las Vegas, Clark County, Nevada Lessor, and Maurice L. De Lay, Lessee,

"Witnesseth: That the said Lessor has leased and by these presents does grant, demise and lease unto said Lessee*m* and the said Lessee has hired and taken, and by these presents does hire and take of and from the said Lessor,

"All that certain premises known as Block 11 and Block 13, situated in Midway City, which includes tavern, cabins and house, (excepting the house with the fish pond) and such fixtures as are now at the premises. The Lessor grants the privilege of having trailor camps on said property.

"This lease is to become effective October 1, 1941, and to extend for a period of two years from date thereof. Payments are to be made in lawful money of the United States of America, on a basis of percentage, towit:

A complete and accurate set of books is to be kept by Lessee, to be available at all times for inspection by the Lessor or his Agents. Lessee, his wife, Elsa Ma*y* DeLay and William Dunn and wife, Ruth Wallace Dunn agree to furnish services free. Lessee is to act as Manager of said premises and is to have not less than $500.00 in merchandise and equipment on hand at all times, which shall be considered as security for the ful*l*fil*l*ment of the contract by Lessor. Lessor agrees to paint the buildings, furnish cabins and houses with beds, to furnish water, electricity to the premises, and access to premises from Highway at all times. At the end of each and every month an inventory is to be taken and after

deducting operating costs the balance of net proceeds is to be divided as follows: 66⅔% to Lessee and 33⅓% to Lessor. The Lessee agrees to pay on the 1st day of each month, starting November 1, 1941.

"The said Lessee hereby covenants to pay said Lessor in such manner and agrees further not to suffer any altration to be made without the written consent of Lessor. And, it is agreed that if any rent or percentage shall be due and unpaid, or if default shall be amde in any of the covenants herein contained then it shall be lawful for the Lessor to re-enter the said premises and to remove all persons therefrom.

"And that, at the expiration of said term or any sooner determination of this lease the said Lessee will quit and surrender the premises hereby demised, in as good order and condition as reasonable use and wear thereof will permit, damages by the elements excepted. And if the Lessee shall hold over the said term with the consent expressed or implied, of the lessor, such holding shall be construed to be a tenancy only from month to month, Lessee to have an option for a period of two additional years on the same basis. The Lessee will not be obligated to this contract if the premises are placed under government supervision whereby liquor or gambling are restricted.

"Lessee further agreed to use Slot Machines and Music Equipment to be furnished by Richard Roschl..

"In witness whereof the said parties have hereunto set their hands this 19 day of September 1941.

> "M. E. Ward
> "Lessor
> "Maurice L. De Lay
> "Lessee

"Ruth W. Dunn
"Elsa Mae De Lay"

Defendants went into possession under the lease on October 1, 1941, began operating a trailer camp, installed a sewage system, and renovated the tavern. The cabins situate on the property being in poor condition, Ward

had work performed on the buildings, and as the cabins were finished the defendants cleaned them up and started renting them. Under the terms of the lease the lessor, Ward, agreed to furnish water, and the supply of water being short, the possibility of development of new sources was discussed by the parties, and DeLay gave Ward the sum of $500 as advance rent, for water development. This money was delivered to Ward on or about November 26, 1941. The defendants secured requisite licenses and began the operation of a bar and gambling games in what is known as the old tavern, situate on said property. In November 1941, defendant DeLay and Miss Mary Haney entered into a partnership, and DeLay and a Mr. Parry entered into an agreement whereby Parry agreed to erect a building adjoining the old tavern, at a cost of several thousand dollars. Parry was to have the right to conduct gambling games in the new building, and was to pay 25% of the profits derived therefrom to DeLay. DeLay was to have the right to conduct all bar business in the new building as well as the old tavern, and all gambling games in the old tavern. The agreement between Parry and DeLay was to become operative and effective only when consented to by Lessor Ward. On the date of the execution of the agreement between Parry and DeLay, the lessor, Ward, signed his name thereto under the words: "Approved and consented to." Parry caused the new building to be constructed, and it was opened for business on February 20, 1942.

On the 8th day of January 1942, plaintiff Johnston caused a notice to vacate to be served upon DeLay. But defendant DeLay continued to occupy the premises until he surrendered possession to the receiver.

The execution of the lease from Ward to DeLay is admitted, but the appellants contend that the lease between Ward and DeLay was subject to an oral understanding that it would not become effective until approved by the plaintiff Johnston. The trial court found, and there is substantial evidence in the record to

sustain that finding, that no such condition was attached to the execution of the said lease.

A jury was impanelled in this case, and certain questions were submitted to them for determination. The questions submitted and the answers thereto are as follows:

Question No. 1: "Do you find from the evidence that the plaintiff, M. E. Ward, during his negotiation with the defendants, Maurice L. DeLay, William Dunn, Ruth Wallace Dunn and Elsa Mae DeLay, informed the said defendants that he was without authority to enter into an agreement or lease for said property to them unless the same should be approved by the said D. H. Johnston." The jury answered said question: "Yes."

Question No. 2: "Do you find from the evidence that the defendants, Maurice L. DeLay, Elsa Mae DeLay, William Dunn and Ruth Wallace Dunn, accepted said instrument identified as Exhibit 'A' attached to plaintiff's Amended Complaint with the understanding between the plaintiff, M. E. Ward, and the defendants herein that said instrument would be approved by the plaintiff herein, D. H. Johnston." The jury answered said question: "Yes."

The court rejected the answers of the jury on the ground that the evidence did not sustain them. Appellants contend that the verdict of the jury was binding. Respondents answer that this is an action in equity, and that in an equity action there is no right to a trial by jury; that in an equity action where a jury is impanelled the verdict is merely advisory and may be disregarded by the chancellor in determining the case. Crosier v. McLaughlin, 1 Nev. 348; Lake v. Tolles, 8 Nev. 285; Brichetto v. Raney, 76 Cal. App. 232, 245 P. 235; Union Oil Co. v. Reconstruction Oil Co., et al., 20 Cal. App. 170, 66 P. 2d 1215.

Appellants deny that the action was one in equity, but we think that the trial was had by both parties and the court upon the theory that the action was one in equity and that the verdict of the jury was merely advisory.

At the time of the return of the answers by the jury to the questions submitted, appellants made no claim that the verdict was final and that judgment could be entered thereon, and consented that the matter be submitted to the court on briefs for decision. The trial having been had on the theory that the action was one in equity and the jury's verdict advisory only, the appellants cannot now claim error on the part of the trial court in deciding the case contrary to the jury's special verdict.

■ This court will not decide the question of whether the action was one at law or in equity, but will treat it as did the parties in the lower court, as being an action in equity. Where the parties and the trial court proceed on the theory that the action is equitable, instead of legal, in nature, neither party thereafter may contend to the contrary. McStay Supply Co. v. Stoddard et al., 35 Nev. 284, 132 P. 545. See, also: Costello v. Cunningham et al., 16 Ariz. 447, 147 P. 701; Radermacher v. Daniels et al., 64 Idaho 376, 133 P. 2d 713; Johnson v. Niichels, 48 Idaho 654, 284 P. 840; Coughlin v. Farmers, etc., Bank, 199 Minn. 102, 272 N. W. 166; Moss v. Goodhart et al., 47 Mont. 257, 131 P. 1071; Bode v. Rollwitz, 60 Mont. 481, 199 P. 688; Stripe v. Meffert et al., 287 Mo. 366, 229 S. W. 762; Limerick v. Jefferson Life Ins. Co., 67 Okl. 178, 169 P. 1080; Newsome v. Allen et al., 86 Wash. 678, 151 P. 111; Belcher et al. v. Adkins et al., 279 Ky. 680, 132 S. W. 2d 52.

Further, a party will not be permitted to sit silently by, but must assert his position at the earliest possible moment. 3 Am. Jur. 415, sec. 871 et seq.

Appellants make a rather extensive argument as to the admissibility of parol evidence to sustain their contention that the written lease between Ward and DeLay was subject to an oral understanding that it was not to be effective until approved or disapproved by Mrs. Johnston. The trial court admitted this evidence and later rejected it as untrue, hence the question of its admissibility need not be determined.

■■ Appellants further contend that Ward, having

attempted to lease all the common property without the consent or authorization of his cotenant, Johnston, said lease was void and that the cotenants, Ward and Johnston, had the right to oust the lessee. Appellants also argue that DeLay took the position that he was entitled to the exclusive possession of the premises for the term of the lease, and excluded the cotenant, Johnston. Such is not the case. All that DeLay claimed was that he acquired the rights and privileges of Ward, and that through the lease he, DeLay, became the cotenant with Johnston. The contention of DeLay in this respect must be sustained.

The lease as executed by Ward is not void; it is binding and valid between Ward and DeLay, and by the terms thereof DeLay, during the period of the lease, became a cotenant with the nonleasing cotenant, Johnston, and DeLay had all rights and privileges incident to such cotenancy. Motor Aid v. Ray, 53 Ga. App. 772, 187 S. E. 120. Even though the lease in this case attempts to grant the whole estate for a definite period, the lease is not void, but is valid as to the interest of Ward. Lanyon Zinc Co. v. Freeman, 68 Kan. 691, 75 P. 995; Satterlee v. Umenthum, 47 S. D. 372, 198 N. W. 823; Grundy v. Martin et al., 143 Mass. 279, 9 N. E. 647; De La Pole v. Lindley et al., 131 Wash. 354, 230 P. 144; Thalis v. Wurdeman, 73 App. D. C. 322, 121 F. 2d 70; Swartzbaugh v. Sampson et al., 11 Cal. App. 2d 451, 54 P. 2d 73.

■ The demand of cotenant Johnston was for exclusive possession; at no time did she demand to be let into possession with the defendant DeLay, which would be the most she would be entitled to. Lee Chuck v. Quan Wo Chong & Co., 91 Cal. 593, 28 P. 45; King v. Dickerman, 11 Gray 480, 77 Mass. 480.

■ Appellants advance the theory that the lease between Ward and DeLay was not a lease but, if anything, created a partnership, joint venture or joint enterprise. We do not think the lease bears such a construction. Smith v. Schultz et al., 89 Cal. 526, 26 P. 1087.

■ ■ Appellants assert that the lease is void as against public policy, in that the lessor was to receive a certain percentage of the proceeds received from gambling games which were to be carried on upon the premises. It is common practice for rents to be paid for leases on business properties based fully or partially upon a percentage of either the gross or net profits of the business. Beckett v. City of Paris Dry Goods Co., 14 Cal. 2d 633, 96 P. 2d 122. In many states gambling is prohibited by statute, and in such states contracts based thereon are malum prohibitum. In this state the subject of gambling is regulated by section 3302 et seq., vol. 1, 1931–1941 Supplement, and section 10201, vol. 2, 1931–1941 Supplement, of Nevada Compiled Laws. These statutes make it unlawful to operate certain gambling games without first securing a license. If the license is obtained, it is lawful to operate them. Places where gambling is carried on under license duly had are not nuisances, but are held to be lawful places. Ex parte Pierotti, 43 Nev. 243, 184 P. 209; In re Deauville, Inc., D. C., 52 F. 2d 963; Christensen v. Valdemar No. 12, 46 Nev. 150, 208 P. 426.

Appellants cite the cases of Burke v. Buck, 31 Nev. 74, 99 P. 1078, 22 L. R. A., N. S., 627, 21 Ann. Cas. 625; Scott v. Courtney, 7 Nev. 419, and Menardi v. Wacker, 2 Nev. 169, 105 P. 287, Ann. Cas. 1912c, 710. The statutes under which these cases were decided contained an express provision that the license to operate would protect the licensee against criminal prosecution. There is no such restrictive provision in our present law, and, further, this important distinction between those cases and the case at bar should be kept in mind; the contract between Ward and DeLay was not based on the profits or losses of a game played by them, whereby one would take a chance of winning or losing to the other; it was to divide the profits, if any, of a business which DeLay had a lawful right to conduct; it was not a case of a game between them where one was to lose and the other to win.

The case of Thiess v. Rapaport, 57 Nev. 434, 66 P. 2d 1000, 69 P. 2d 96, cited by appellants, has no application here. The gambling debt set up in that case arose from playing "black jack" in Seattle, Washington, and the situation was quite different from the facts in this case. An inspection of the lease discloses that it does not contemplate any illegal activity.

 Appellants urge that the trial court committed error in overruling their demurrer to the cross-complaint and permitting cross-complainants to amend their ad damnum clause at the end of the trial. This amendment was allowed to conform to the proof. It is asserted that the cross-complaint fails to state a cause of action, but we think that it does state a cause of action to the effect that the plaintiffs wrongfully and *personally* evicted the defendants. The making or filing of an amendment to conform to the proof is within the sound discretion of the trial court, and this may be done after the cause has been submitted. Hancock v. Board of Education, 140 Cal. 554, 74 P. 44; Valencia v. Shell Oil Co. et al., 23 Cal. 2d 840, 147 P. 2d 558; Ramboz v. Stansbury, 13 Cal. App. 649, 110 P. 472; Gaddis v. Grant, 39 Cal. App. 437, 179 P. 410; Smart v. Valencia, 49 Nev. 411, 248 P. 46; Castleman v. Redford, 61 Nev. 259, 124 P. 2d 293; Shields v. Orr Extension Ditch Co., 23 Nev. 349, 47 P. 194; Federal Mining & Engineering Co. v. Pollak, 59 Nev. 145, 85 P. 1008. Under the circumstances of this case, we cannot say that the trial court abused its discretion in permitting the amendment.

 Appellants further claim that the fact that DeLay entered into a partnership with Mary Haney renders the judgment erroneous, that because of such partnership DeLay is not a real party in interest and therefore should not have been permitted to prosecute the case and recover damages. The lease was to DeLay, and Mary Haney not being a party to the lease, it seems it was perfectly proper for DeLay to bring the action to enforce his rights, and it appears that appellants, being advised of the DeLay-Haney agreement, made no effort

to bring in Mary Haney as a party. Neither was any question raised by way of demurrer as to misjoinder or nonjoinder of parties, nor was the question raised at the trial, therefore the question of defect in parties, if any, was waived.

In a supplemental brief respondents have discussed the question as to whether at the commencement of the action or at any time thereafter through completion of the trial either plaintiff was entitled to possession or right of possession of the premises. There is substance to this contention, but in view of the conclusions we have reached on questions hereinbefore discussed in this opinion, we deem it unnecessary to decide this question.

We now take up the question of the damages allowed respondents for their alleged wrongful eviction from the premises. According to the issues made by the cross-complaint, answer and reply thereto, the damages which the court found defendants and cross-complainants had sustained was because of the wrongful eviction of the said defendants and cross-complainants by plaintiffs. The cross-complaint alleges that the plaintiffs evicted the defendants and cross-complainants, and the finding of the court follows that allegation.

It is conceded that possession of the property was taken from the defendants by a receiver appointed at the instance and request of the plaintiffs. There is no allegation in any pleading that in securing the appointment of the receiver the plaintiffs acted wrongfully or maliciously or without probable cause, nor is there a finding by the court that the action of the plaintiffs in securing the appointment of the receiver was wrongful or malicious or without probable cause. So far as the pleadings are concerned, the only place the appointment of a receiver is brought into the issues is in the answer to the cross-complaint, wherein the plaintiffs and cross-defendants set out the fact of the appointment of the receiver and of his having taken possession under order of the court. Respondents, placing their denial on the ground that they did not have sufficient knowledge to otherwise

answer, deny that a receiver had taken possession of, or at any time had possession of, the property. Appellants, in their brief, raise the point that there is no allegation in the cross-complaint that the appointment of the receiver was improper or that the receiver acted wrongfully in taking possession of the premises.

 The appointment of a receiver at the instance of a lessor constitutes an eviction of the lessee when the receiver takes possession pursuant to the order appointing him. Telegraph Avenue Corporation v. Raentsch, Cal. App., 261 P. 1053; Id., 205 Cal. 93, 269 P. 1109, 61 A. L. R. 366; Redmon v. Graham, 211 Cal. 491, 295 P. 1031.

 Also, a receiver appointed in a proceeding in unlawful detainer takes possession of the property for the benefit of the lessor. Redmon v. Graham, 211 Cal. 491, 295 P. 1031; Telegraph Avenue Corporation v. Raentsch, 205 Cal. 93, 269 P. 1109, 61 A. L. R. 366, 367; Gordon v. Harris, 94 Cal. App. 682, 271 P. 779.

 However, the eviction thus obtained must be by reason of the wrongful procurement of the appointment of the receiver in order to authorize the evicted lessee to recover damages. While the appointment results in eviction, the cause of action for damages which may arise therefrom does not stem from the eviction itself; that fact is considered in measuring the damages; the cause of action arises out of the wrongful procurement of the appointment of a receiver. Eviction is occasioned by the court, through its duly appointed agent. The court cannot be sued, but the law provides for compensation to a party damaged by wrongful eviction by an agent of a court, by placing liability on a party for wrongfully instituting the action which results in eviction. We repeat: damages are allowed *not for wrongful eviction*, but for *wrongful procurement of the appointment of the agent of the court*. To sustain a judgment for damages under such circumstances, a party must plead and prove, and the court must find,

a wrongful procurement of the appointment of a receiver. A pleading and finding by the court of wrongful eviction of a party, with proof of eviction by a receiver, and no pleading or finding that the appointment of the receiver was wrongful, will not support a judgment for damages. The following cases deal with the right to recover damages for wrongful appointment: Bank of Shirley v. Bonds et al., 178 Ark. 1079, 13 S. W. 2d 816; Lyon v. United States Fidelity & Guaranty Co., 48 Mont. 591, 140 P. 86, Ann. Cas. 1915D, 1036. In Riner v. Ramey-Milburn Co., 166 Ark. 221, 265 S. W. 963, 964, the following appears:

"But in jurisdictions like ours, where there is no such statute, and where there is no law forbidding the appointment of a receiver without bond, and where the matter of the appointment of such receiver depends entirely upon the discretion of the court, judge, or chancellor, there can be no liability for damages growing out of the appointment of a receiver, in the absence of *allegations and proof* to the effect that the appointment was sought and obtained maliciously, or without probable cause." (Italics supplied.)

It will be noted that this case makes a distinction, as to the proof required and showing to be made, between an action on the bond and one against the parties without reference to the bond. In Nevada we have no statute or law forbidding the appointment of a receiver without bond, and the appointment of a receiver in this state rests entirely within the discretion of the judge or court.

We do not hold that the appointment must be found to have been secured through malice or a want of probable cause, but it must at least be found to be wrongful. In Thornton-Thomas Mercantile Co. v. Bretherton, 32 Mont. 80, 80 P. 10, at page 15, column 1, it is said:

"The third and fifth instructions are attacked because they ignore the questions of malice and want of probable

cause. * * * According to our view of the law, these issues were rightfully eliminated from the consideration of the jury."

See, also: Wagoner Oil, etc., Co. v. Marlow et al., 137 Okl. 116, 278 P. 294, at page 310.

In the case of K. C. Oil Co. v. Harvest Oil, etc., 80 Okl. 61, 194 P. 228, a cross-petition was filed, and the wrongfulness of the appointment of a receiver was alleged. The cross-petition in that case was similar to the office performed by the cross-complaint in the instant case.

In the case of Strum v. Blair, 182 Ill. App. 413, the wrongfulness of the appointment was alleged in a separate action for damages. In the case at bar the whole matter was attempted to be adjudicated in the one action, by setting up a cause of action for damages in a cross-complaint, which we believe to be proper practice. If the facts in this case were such as to establish that the procurement of the appointment of the receiver was wrongful, and had the pleadings put the matter in issue, the court could have made its finding, from the evidence adduced, as to such wrongfulness of the appointment, and could have entered its judgment thereon. That was a matter for the trial court to determine in the first instance. This court will not search the record to supply a finding in that respect.

The case of Warren v. DeLong, 59 Nev. 481, 97 P. 2d 792, establishes the law of this state to be that there need be no express adjudication as to the wrongfulness of the appointment of the receiver in order to give a right of action for the recovery of damages, if such wrongfulness can be found or implied from the facts of the case in which the appointment was sought. It will be noted that in the Warren v. DeLong case the action for damages was an independent action, and the wrongfulness of the appointment was expressly alleged and that fact was expressly found by the court. In a case such as the one here, where not only the wrongfulness of the appointment of the receiver was not alleged, but the appointment was entirely ignored in the pleadings by defendants and cross-complainants, save a denial

of the possession of the property by the receiver, on the ground of lack of knowledge, also no mention thereof in the findings of the court, it is our conclusion there exists no basis or foundation for the allowance of damages. The judgment in this case is for wrongful eviction of defendants by plaintiffs. The proof is that the eviction occurred by reason of the fact that the plaintiffs secured the appointment of a receiver, who took possession. Hence there is no evidence in the record to support the judgment; the evidence adduced at the trial was directly contrary to the allegations of the cross-complaint and the finding of the court.

The judgment insofar as it provides that the plaintiffs take nothing by reason of their action is sustained, and the judgment insofar as it allows damages to the defendants and cross-complainants is reversed.

Each side to pay their own costs.

ON PETITION FOR REHEARING

August 6, 1945. 161 P. 2d 350.

*Morse & Graves,* of Las Vegas, for Appellants.

*Edgar B. Hervey,* of San Diego, Calif. (*J. R. Lewis,* of Las Vegas, *Merwyn H. Brown,* of Winnemucca, and *Henry F. Walker,* of Los Angeles, Calif., of counsel), for Respondents.

## OPINION

By the Court, ORR, J.:

In the petition for rehearing filed by respondents they do not take issue with our holding that an allowance of

damages for wrongful eviction by a receiver could be made only in the event that the procurement of the appointment of the receiver was unlawul. But respondents argue that: "the pleadings and findings (supported by the evidence) sustain the award of damages for the eviction of, and withholding from, defendants of the premises through the wrongful act of plaintiffs in procuring the appointment of the receiver." Respondents proceed to set out certain findings and certain parts of the pleadings which they maintain sustain their position. However, the allegation of the cross-complaint, as we read it, sets up an entirely different theory. That allegation reads as follows: "That thereafter on or about February 20, 1942, and while defendant Maurice L. DeLay was in lawful and peaceful possession of said premises, under and by virture of the terms of said agreement, plaintiffs did wrongfully, and unlawfully and forcefully eject said defendant from said premises and the whole thereof, and deprive defendant of the use and occupancy thereof, and thence ever since has continued so to wrongfully and unlawfully deprive said defendant of the use and occupancy of said premises, all to his damage in the sum of Twenty Thousand Dollars ($20,000.00)."

And the principal finding of the court upon which the judgment was based follows the allegation of the cross-complaint hereinabove set out. Said finding reads as follows: "That it is true that on February 20, 1942, and while defendant Maurice L. DeLay was in lawful and peaceful possession, under and by virtue of the terms of the lease agreement first hereinbefore referred to, of the premises in said lease agreement described, plaintiffs did wrongfully and unlawfully and forcefully eject said defendant from said premises and the whole thereof, and did thereafter deprive said defendant of the use and occupancy thereof, and thence ever since have continued, and do still continue, so to wrongfully and unlawfully deprive said defendant of the use and occupancy of said premises, all to his damage in the sum of

Twenty-five Thousand, Nine Hundred Seventy Three dollars and seventy-six cents ($25,973.76)."

Following this finding the court entered its judgment in favor of the respondents in the said sum of $25,973.76.

We are convinced, from an inspection of the allegation of the cross-complaint and of Finding XV hereinabove set out, that the cause of action was based upon the theory, and the court so found, that the damages sustained resulted from a wrongful eviction of respondents by appellants, and not from wrongfully procuring the appointment of the receiver.

The petition for rehearing is denied.