MARTIN B. SIGEL, Appellant, *v.*
THOMAS McEVOY, Respondent.

No. 15412

October 23, 1985                                      707 P.2d 1145

*George Foley, Sr.,* Las Vegas, for Appellant.

*Schreck, Sloan, Bernhard & Jones,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

This is an appeal from an order of the district court dismissing appellant's complaint against respondent on the ground that the complaint failed to state a claim upon which relief could be granted. *See* NRCP 12(b)(5). For the reasons set forth below, we reverse the district court's order of dismissal.

In his complaint in the district court, appellant alleged that he and respondent entered into an oral agreement in the spring of 1983. Under the terms of this agreement, appellant agreed to pay respondent's costs in entering a poker series sponsored by the Horseshoe Club in Las Vegas, and respondent, in return, agreed to pay appellant twenty percent of any winnings he might receive in the series. Appellant further alleged that he had paid respondent to enter two separate tournaments in the poker series and that respondent won approximately $657,000 in these two tournaments. According to appellant's complaint, respondent paid appellant only $21,400 of the $131,400 respondent allegedly owed him. Appellant's complaint therefore sought the remaining $110,000 from respondent.

Respondent subsequently moved the district court to dismiss appellant's complaint pursuant to NRCP 12(b)(5), for failure to state a claim for relief. Specifically, respondent contended that appellant's cause of action was premised upon an unenforceable gaming debt. The district court agreed and entered an order of dismissal. This appeal ensued.

This court has traditionally followed the common law doctrine, as originally expressed in Statute of 9 Anne, c. 14, § 1, that a gaming debt is not legally enforceable. *See, e.g.,* Sea Air Support, Inc. v. Herrmann, 96 Nev. 574, 613 P.2d 413 (1980); Burke v. Buck, 31 Nev. 74, 99 P. 1078 (1909); Evans v. Cook, 11 Nev. 69 (1876). In 1983, the legislature enacted NRS 463.361(1), which provides in part that "gaming debts not evidenced by a credit instrument are void and unenforceable and do not give rise to any administrative or civil cause of action." Thus, the legislature to some extent modified the common law prohibition against enforcement of gaming debts. NRS 463.361(1), however, was enacted after the parties entered into their agreement and after the

two tournaments in question. The statute is therefore not applicable to the present case. *See* 1983 Nev. Stat. 1847 (NRS 463.361(1) is applicable only to transactions occurring on or after the effective date of the statute, May 26, 1983); *see also* NRS 463.368(1). Accordingly, we must look to the dictates of the common law to determine the enforceability of the parties' agreement.

As indicated above, the common law generally provides that gaming debts are not legally enforceable. Appellant admits as much, but contends that the debt respondent allegedly owes him should not be characterized as a gaming debt; appellant instead seeks to characterize his agreement with respondent as a "joint business venture." In support of his argument, appellant relies primarily upon our opinion in Johnston v. DeLay, 63 Nev. 1, 158 P.2d 547 (1945).

In *Johnston,* the plaintiffs had leased to defendants certain property in Clark County, consisting of a bar, a motel, and a licensed gaming area. Pursuant to the lease agreement, the defendants agreed to pay the plaintiffs a certain percentage of the profits they obtained from the business as rent for the leased property. The plaintiffs subsequently sought to regain possession of the property in a district court proceeding, and attacked the lease in part on the ground that the lease was void as against public policy because the rental provision in the lease was based upon profits received in part from gaming operations. The district court, however, entered judgment in defendants' favor and plaintiffs then appealed to this court.

On appeal, the plaintiffs in *Johnston* renewed their argument that the lease agreement violated public policy. The plaintiffs relied upon the general common law doctrine that gaming debts are legally unenforceable. We concluded, however, that the rental agreement did not fall within the scope of the common law prohibition against gaming debts despite the fact that the rent was to be paid in part from gaming profits.

First, we noted that the defendants had a lawful right to conduct gaming activities because their casino had been duly licensed by the state, and we noted that the agreement to divide the profits of this lawfully conducted business was in the nature of a commonplace business arrangement. *Id.* at 11, 158 P.2d at 552. Further, we noted that the rental agreement was not like the typical unenforceable gaming debt because it was "not based upon the profits or losses of a game played by the defendants and the plaintiffs, whereby one would take a chance of winning or losing to the other. . . ." *Id.* We therefore concluded that the agreement was legally enforceable.

Appellant contends that his agreement with respondent should

similarly be characterized as a legitimate business arrangement rather than a common law gaming debt under the rationale of *Johnston*. We agree. Appellant allegedly provided respondent with funds to cover respondent's costs in entering a lawful poker tournament sponsored by a duly licensed Las Vegas casino in which appellant did not participate. If his evidence prevails, their agreement was to divide between themselves the profits made in the tournament, and was not a situation in which one player was to lose to the other.[1]

We can perceive of no logical basis for distinguishing between loans made to private individuals to engage in lawful wagering and loans made to casinos to engage in the same activities, where the ultimate purpose of the loans in both instances is to divide the benefits of any profits accrued from the wagering.[2] *See generally* Weisbrod v. Fremont Hotel, 74 Nev. 227, 326 P.2d 1104 (1958) (court refuses to distinguish between gaming patrons and gaming casinos for purposes of common law prohibition against gaming debts).

In light of the above, we conclude that the agreement entered into by appellant and respondent was legally enforceable. Accordingly, we conclude that the district court erred by granting respondent's motion to dismiss appellant's complaint, and we therefore reverse the district court's decision and remand this matter for further proceedings.

---

[1]We note that all of the Nevada cases relied upon by respondent in support of his argument that gaming debts are unenforceable are cases in which one party loaned money to another party to enter into wagering between themselves. *See, e.g.,* Sea Air Support, Inc. v. Herrmann, *supra;* Corbin v. O'Keefe, 87 Nev. 189, 484 P.2d 565 (1971); West Indies v. First Nat. Bank, 67 Nev. 13, 214 P.2d 144 (1950); Burke v. Buck, *supra;* Scott v. Courtney, 7 Nev. 419 (1872).

[2]To the extent that our holdings in *Johnston* and the present case are in conflict with the language used in Statute of 9 Anne, *supra,* we hereby decline to follow that portion of the statute. We do not, however, deviate from our previous holdings announced regarding the enforceability of gaming debts incurred between two players in the same game or between a casino and a patron; these traditional forms of gaming debts will still not be enforceable unless they come within the scope of NRS 463.361(1), *supra.*