RECOVERY CONSULTANTS, INC., as Assignee of the SANDS HO-
TEL, Respondent-Appellant, v MARILAN SHIH-HSIEH et al.,
Appellants-Respondents.

First Department, November 22, 1988

APPEARANCES OF COUNSEL

*Arnold Koenig* of counsel *(Margolies & Koenig,* attorneys), for respondent-appellant.

*Elliot B. Pasik* of counsel *(Rivkin, Radler, Dunne & Bayh,* attorneys), for appellants-respondents.

OPINION OF THE COURT

SULLIVAN, J. P.

Recovery Consultants, Inc., as assignee of the Sands Hotel, seeks the recovery of $1,000,000 and accrued interest from March 1982 against Marilan Shih-Hsieh and her son, Nelson, who were guests of the hotel at the time the alleged debt was incurred. The original complaint alleged a single cause of action against Marilan, based on 20 checks drawn by her, each in the amount of $50,000, totaling $1,000,000, payable to the Sands Hotel. A second cause of action was asserted against Nelson, based on his execution of a $1,000,000 check, also payable to the Sands Hotel. Their *pro se* answer alleged that "[t]he cheques (markers) were for the sole purpose of gambling" and that "[g]ambling debts are unenforceable in the State of New York and in the State of Nevada." The answer also asserted that Nelson was "not [a] principal" in the transaction.

Recovery eventually served an amended complaint, which is at issue here, asserting three causes of action against Marilan and one against Nelson. The first cause of action alleges a $1,000,000 loan to Marilan, while the second is based on the 20 $50,000 counter checks or markers which she signed. The third cause of action alleges breach of contract. The cause of action against Nelson is based on his $1,000,000 check.

Shortly after service of the amended complaint, which was timely answered, Marilan was exhaustively deposed. Although a notice to take his deposition was also served upon Nelson, he refused to appear, complaining to plaintiff's counsel, prior to the date set for deposition, that as a mere "bystander", whose sole involvement in the transaction at issue was the gratuitous giving of a personal $1,000,000 check to the Sands Hotel "as a gesture of appreciation," his testimony would be "wasteful and unnecessary". As a result of his nonappearance, Nelson's answer was, over his opposition, stricken and a judgment in the sum of $1,468,672.50, representing principal and interest, entered against him.

After retaining counsel, the Shih-Hsiehs moved to vacate

the default judgment and for summary judgment dismissing the amended complaint, arguing that the amount in dispute represented an unenforceable Nevada gambling debt. In her affidavit in support of summary judgment, opposed solely by an attorney's affirmation, not made on personal knowledge and advancing a legal argument only, Marilan described the underlying incident in detail. She was a guest at the hotel with her two adult children from March 23 through March 28, 1982. Upon her arrival, she applied for and received a $1,000,000 line of credit, which was arranged by Mr. Smythe, the hotel president, so that she could play blackjack at the hotel's casino. In exchange for her $50,000 "marker", know also as a counter check, she received a stack of chips of a similar value. In all, she signed 20 markers, each in the sum of $50,000, receiving commensurate value in chips, all of which she lost at the blackjack tables. The chips were not used for any purpose other than gambling. No cash was involved. Although her son Nelson did not gamble, before departing he gave a $1,000,000 check to the hotel as a courtesy, to express "our appreciation". The check was never deposited.

The court granted the motion only to the extent of reinstating Nelson's answer and vacating a restraining notice on condition of payment of $5,000 in counsel fees to Recovery. The judgment was to remain as security. In denying summary judgment, the court found the proffered defense of illegality to be "fraught with doubt". The parties cross-appealed. We find that since the sum sought to be recovered is, as a matter of law, a gambling debt, which was unenforceable under Nevada law at the time incurred, summary judgment should have been granted and the amended complaint dismissed.

As a general rule, the validity of a contract is determined by the law of the jurisdiction where the contract is made. (*Russell v Societe Anonyme des Etablissements Aeroxon*, 268 NY 173, 181.) If legal there, the contract is enforceable elsewhere. This principle of comity yields, however, to the well-established exception that a court will not enforce a contract, even though valid where made, if its enforcement would contravene the public policy of the forum. (*People v Martin*, 175 NY 315, 320-321; *Straus & Co. v Canadian Pac. Ry. Co.*, 254 NY 407, 414.)

For more than a century, until a legislative change, effective June 1, 1983, Nevada courts refused to enforce debts incurred as a result of gambling, despite the legality of gambling at authorized licensed casinos in that State. (*See,*

*e.g., Scott v Courtney,* 7 Nev 419; *Evans v Cook,* 11 Nev 69; *Sandler v Eighth Judicial Dist. Ct.,* 96 Nev 622, 614 P2d 10; *Sea Air Support v Herrmann,* 96 Nev 574, 613 P2d 413; *Corbin v O'Keefe,* 87 Nev 189, 484 P2d 565; *Wolpert v Knight,* 74 Nev 322, 330 P2d 1023; *Weisbrod v Fremont Hotel,* 74 Nev 227, 326 P2d 1104.) The proscription has been held to apply to both the patrons as well as to the proprietors of gambling establishments. *(Corbin v O'Keefe, supra; Weisbrod v Fremont Hotel, supra; West Indies v First Natl. Bank,* 67 Nev 13, 214 P2d 144.) At the same time, however, a loan agreement to share in the winnings from the borrower's gambling ventures with others was held to be enforceable. *(See, Sigel v McEvoy,* 101 Nev 623, 707 P2d 1145; *see also, Johnston v DeLay,* 63 Nev 1, 158 P2d 547.) In refusing to enforce gaming debts, Nevada courts applied the common law, as memorialized, at least in part, in the "Statute of Anne" (Statute of 9 Anne, ch 14, § 1), which provides that all notes drawn for the purpose of reimbursing or repaying any money knowingly lent or advanced for gaming are "utterly void, frustrate, and of none effect, to all intents and purposes whatsoever."

By legislative enactment, effective June 1, 1983, Nevada's refusal to enforce gambling debts was changed, but prospectively only, to the extent of providing that a "credit instrument", defined as "a writing which evidences a gaming debt owed to a person who holds a nonrestricted license", is "valid and may be enforced by legal process" if accepted "on or after June 1, 1983". (Nev Rev Stat §§ 463.367, 463.368 [1].) Since the transaction at issue occurred before June 1, 1983, Recovery may not avail itself of the statute.

As a review of this record makes clear, in exchange for counter checks totaling $1,000,000, payable to the Sands Hotel, Marilan received chips, which were all returned to the hotel in the course of her gambling at its casino. That these checks were drawn for the purpose of repaying credit knowingly advanced for gaming, as was Nelson's $1,000,000 check, is, on this record, beyond dispute. Since the checks are void and unenforceable in Nevada, they are likewise unenforceable in this State. *(Russell v Societe Anonyme des Etablissements Aeroxon, supra,* 268 NY, at 181.) Thus, there is no policy question to weigh and, in refusing to enforce the debt, we are merely applying Nevada law. *(Intercontinental Hotels Corp. v Golden,* 15 NY2d 9, 16; *see, Engster v Jewett,* 28 AD2d 591.)

Citing *Craig v Harrah* (66 Nev 1, 201 P2d 1081), Recovery argues that Nevada gaming debts are unenforceable only

when incurred in "the heat of gambling". In that regard, it points to Marilan's deposition testimony that, after having obtained the $1,000,000 line of credit upon her arrival at the hotel, she spent approximately one hour in her room having refreshments before proceeding to the casino to gamble. Thus, Recovery argues, the checks were not executed and delivered in "the heat of gambling" and are enforceable. Unfortunately for Recovery, however, the court in *Craig v Harrah* did not set any new or different standard as to what constituted a gambling debt but, rather, merely found itself bound by the trial court's finding that the proof was insufficient to establish the defense that the money advanced was for the purpose of gambling. In the instant case, Recovery has completely failed to controvert the Shih-Hsiehs' tendered proof that the instruments at issue were executed and delivered solely for gambling. In any event, even if plaintiff's fanciful "heat of gambling" were the appropriate standard of unenforceability, that test was more than met here. Plainly, the transaction at issue is the type which will not be enforced by either the Nevada or New York courts.

Recovery also argues that, although the Sands Hotel advanced $1,000,000 to Marilan, it does not hold a gambling license. The Sands Casino does, and, thus Recovery argues, it was the Casino which engaged her in gambling activities. This issue was never raised in the motion court. Factual assertions not properly contained in the record may not be considered by an appellate court. *(Bankers Trust Co. v Martin,* 51 AD2d 411, 414; *Kahn v City of New York,* 37 AD2d 520, 521, *affd* 30 NY2d 690.)* Nor, obviously, may a party argue on appeal a theory never presented to the court of original jurisdiction. *(Huston v County of Chenango,* 253 App Div 56, 60-61, *affd* 278 NY 646.)

In light of our determination that the debt is unenforceable, we need not reach the Shih-Hsiehs' argument that Nelson's bank check is void and unenforceable because it was never presented for payment within a reasonable time.

Accordingly, the order of the Supreme Court, New York County (Beatrice Shainswit, J.), entered on or about February 4, 1988 which, *inter alia,* denied defendants' motion for summary judgment, should be reversed, on the law, without costs or disbursements, the motion granted, the default judgment against Nelson Shih-Hsieh vacated and the amended complaint dismissed.

CARRO, MILONAS, ROSENBERGER and WALLACH, JJ., concur.

Order, Supreme Court, New York County, entered on February 4, 1988, unanimously reversed, on the law, without costs and without disbursements, the motion granted, the default judgment against Nelson Shih-Hsieh vacated and the amended complaint dismissed.