**CARNIVAL LEISURE INDUSTRIES, LTD., Plaintiff–Appellee,**

v.

**George J. AUBIN, Defendant–Appellant.**

No. 89–6289.

United States Court of Appeals,
Fifth Circuit.

Aug. 16, 1991.

Clinard J. Hanby, Houston, Tex., for defendant-appellant.

Hugh L. McKenney, McKenney & Jesse, Houston, Tex., for plaintiff-appellee.

Before GARWOOD and WIENER, Circuit Judges, and VELA, District Judge.[1]

GARWOOD, Circuit Judge:

Appellant-defendant George J. Aubin (Aubin) appeals the district court's grant of summary judgment in favor of appellee-plaintiff Carnival Leisure Industries, Ltd. (Carnival Leisure) enforcing a gambling debt of $25,000. Aubin claims that Texas public policy prevents enforcement of debts incurred for funds or credit advanced to a gambler for gambling purposes by a participant in the gambling activity. We agree and accordingly reverse.

## Facts and Proceedings Below

During a January 1987 visit to the Bahamas, Aubin, a Texas resident, visited Cable Beach Hotel and Casino (the Casino), which was owned and operated by Carnival Leisure. While gambling at the Casino, Aubin received markers or chips from the Casino and the Casino received drafts drawn on Aubin's bank accounts in Texas. Aubin spent all of the markers provided on gambling, although he could also have spent them on food, beverages, souvenirs, or lodging at the Casino. Aubin ultimately gambled and lost $25,000, leaving the Casino with the same amount in bank drafts.

Carnival Leisure was unable to cash the bank drafts because Aubin had subsequently directed his bank to stop payment. Carnival Leisure sued Aubin in the United States District Court for the Southern District of Texas to enforce the debt. The district court granted Carnival Leisure's motion for summary judgment against Aubin in the amount of $25,000 and attorney's fees and costs. Carnival Leisure claimed that the debt was enforceable under Texas law because public policy had changed and now favored enforcement of gambling debts. The district court agreed. Aubin raises on appeal only the issue of whether public policy in Texas continues to prevent the enforcement of gambling debts.

---

1. District Judge of the Southern District of Texas, sitting by designation.

### Discussion

*Gulf Collateral, Inc. v. Johnston,* 496 S.W.2d 123, 124 (Tex.Civ.App.1973), restates the long-standing rule in Texas against enforcing gambling debts:

"'Patrons of gambling establishments occasionally borrow money from the proprietor or secure cash or chips from him by giving a check or other instrument, so as to take part in the game. It has been recognized that under such circumstances the proprietor (who is regarded as a participant in the game) cannot recover from the borrower on the loan or because the check or other instrument has been dishonored.'" *Id.* (quoting 53 A.L.R.2d at 372).

*See Gulf Collateral, Inc. v. George,* 466 S.W.2d 21 (Tex.Civ.App.1971); *Gulf Collateral, Inc. v. Cauble,* 462 S.W.2d 619 (Tex. Civ.App.1971); *Springer v. Sahara Casinos Co.,* 322 S.W.2d 33 (Tex.Civ.App.1959). Both parties concede that under this rule Aubin's debt to Carnival Leisure would be unenforceable under Texas law.[2]

Carnival Leisure claims, however, that since 1973 the public policy of Texas toward gambling and the legality of gambling debts has changed. Although gambling is generally proscribed in Texas, Tex. Penal Code §§ 47.01–.08, there has been an exception for the "social" gambler since 1973. Tex.Penal Code § 47.02(b). The Texas legislature enacted the Bingo Enabling Act in 1981, Tex.Rev.Civ.Stat.Ann. art. 179d (Vernon 1991), the Texas Racing Act in 1986, Tex.Rev.Civ.Stat.Ann. art. 179e (Vernon 1991), and the Charitable Raffle Enabling Act in 1989, Tex.Rev.Civ.Stat. Ann. art. 179f (Vernon 1991). Provisions were added to the Texas Penal Code excepting these three activities from its general proscription against gambling. Tex. Penal Code §§ 47.02(c), 47.10 (bingo exception); Tex.Penal Code § 47.11 (racing exception); Tex.Penal Code §§ 47.02(c), 47.12 (raffling exception).

The enactment of statutes legalizing some forms of gambling admittedly evidences some dissipation or narrowing of public disapproval of gambling. However, such statutes hardly introduce a judicially cognizable change in public policy with respect to gambling generally. *See GNLV Corp. v. Jackson,* 736 S.W.2d 893, 894 (Tex. App.1987) (stating in dicta that "Texas has a well-established public policy of not recognizing or enforcing rights arising from gambling transactions.") (citation omitted). The social gambling permitted by section 47.02(b) is confined to private places where no one receives any benefit other than his personal winnings and all participants are subject to the same risks, a categorically vastly different kind of activity from the sort involved here. Moreover, *Johnston* was decided the same year section 47.02(b) was enacted, and *Jackson* was handed down over a decade later. The racing, bingo, and raffling exceptions are narrow, strictly regulated exceptions to a broad public policy in Texas against most forms of gambling.[3] Further, the kind of

---

2. The district court looked solely to Texas law and made no determination of Bahamian law. Neither party challenges the district court's choice of Texas law in this case. We therefore do not rule on the question of whether the law of the Bahamas should have been applied or whether its application would require enforcement of Aubin's debt. Neither party has provided evidence (or requested judicial notice) as to Bahamian law or as to whether gambling is legal or whether gambling debts are legally enforceable in the Bahamas. It is noteworthy, however, that the Texas Supreme Court has stated that where collection of the gambling debt entails the cashing of a check (inferentially of a Texas resident) on a Texas bank, Texas courts apply Texas law. *Castilleja v. Camero,* 414 S.W.2d 424, 427 (Tex.1967) (citing *Springer, supra,* and *Garza v. Richmond,* 249 S.W. 889 (Tex. Civ.App.1923)); *see George,* 466 S.W.2d at 23.

3. Appellees rely on *National Recovery Systems, Div. Assignee of Caesar Tahoe Corp. v. Kasle,* 662 F.Supp. 139 (E.D.Mich.1987), arguing that the district court in that case ruled that Michigan's enactment of gambling statutes similar to gambling statutes enacted in Texas represented a shift in public policy. The *Kasle* court held that Michigan's public policy would not be offended by the enforcement of a gambling debt that would have been enforceable where the debt was incurred.

The reasoning of *Kasle* does not assist resolution of the instant case. First, a subsequent ruling by a federal district court flatly rejected *Kasle*'s assessment of Michigan's public policy. *Boardwalk Regency Corp. v. Travelers Express Co., Inc.,* 745 F.Supp. 1266, 1272 (E.D.Mich. 1990) (relying on Michigan statute that "conclusively establishes public policy regarding claims

gambling engaged in here is not of the sort permitted by any of these exceptions.

Even if gambling legislation in Texas were evidence sufficient to warrant judicial notice of a shift in public policy with respect to legalized gambling, such a shift would not be inconsistent with a continued public policy disfavoring gambling on credit. *See, e.g., King International Corp. v. Voloshin,* 33 Conn.Supp. 166, 366 A.2d 1172, 1174 (Super.Ct.1976) ("It is not incongruous for a legislature to sanction certain forms of gambling and still refuse the collection of gambling debts."). In fact, in enacting the Texas Racing Act, the legislature both expanded the field of legalized gambling and implicitly restated its disapproval of gambling on credit. The Act provides that the Texas Racing Commission "shall adopt rules prohibiting an association from accepting a wager made on credit and shall adopt rules prohibiting automatic banking machines within the enclosure." Tex.Rev.Civ.Stat.Ann. art. 179e, § 11.04(c) (Vernon 1991).[4] Bingo game operators are effectively prohibited from loaning bingo-generated funds to customers for the purpose of enabling participation in bingo games. *See* Tex.Rev.Civ. Stat.Ann. art. 179d, § 19a (Vernon 1991).

"On appeal, we evaluate a district court's decision to grant summary judgment by reviewing the record under the same standards used by the district court. Therefore, we cannot affirm a summary judgment ruling unless 'we are convinced ... that the movant is "entitled to a judgment as a matter of law." ' " *Herrera v. Millsap,* 862 F.2d 1157, 1159 (5th Cir.1989) (citations omitted) (quoting *Brooks, Tarlton,*

*Gilbert, Douglas & Kressler v. United States Fire Ins. Co.,* 832 F.2d 1358, 1364 (5th Cir.1987) (quoting Fed.R.Civ.P. 56(c))). Although Aubin could have used the loaned markers for non-gambling purposes at the Casino, it is undisputed that they were in fact used exclusively for gambling. Aubin's gambling debt therefore fits squarely within the terms of *Johnston* 's statement of the public policy of Texas prohibiting enforcement of gambling debts owed to gambling participants incurred for the purpose of gambling.

### Conclusion

We hold that the public policy in Texas against gambling on credit prevents enforcement of a debt incurred for the purpose of gambling and provided by a participant in the gambling activity. As "we are bound to apply state law as it is, not as we might wish that it were," *Sheppard Federal Credit Union v. Palmer,* 408 F.2d 1369, 1372 (5th Cir.1969), the district court's grant of summary judgment in favor of Carnival Leisure is accordingly REVERSED and this case is REMANDED to the district court for further proceedings consistent with this opinion.

REVERSED and REMANDED.

VELA, District Judge, concurring:

I reluctantly concur in this panel's opinion. I recognize that Texas case law currently supports Judge Garwood's well reasoned opinion and in all likelihood, the Texas Supreme Court would have come to the very same decision but the unfortunate outcome seems most inequitable.

---

asserted by directly barring enforcement of contracts for gambling debts."). Second, The *Kasle* court, in applying Nevada law, concluded that the debt sued upon would have been enforceable in Nevada, citing *Sigel v. McEvoy,* 101 Nev. 623, 707 P.2d 1145 (1985). The situation in *Kasle* is inapposite because the district court in the instant case applied only Texas and not Bahamian law.

In any event, we do not find *Kasle* 's reasoning persuasive insofar as it suggests that the Texas legislature's enactment of narrow, limited exceptions to its statute criminalizing gambling removes the public policy against the sort of

gambling (and the enforcement of debts therefrom) that continues to be illegal.

4. The Texas Racing Act also limits wagering according to the following terms: "Only a person inside the enclosure where a race meeting is authorized may wager on the result of a race presented by the association by contributing money to the pari-mutuel pool operated by the association." Tex.Rev.Civ.Stat.Ann. art. 179e, § 11.04(a) (Vernon 1990). In the context of the prohibition of wagering on credit, it is reasonable to interpret "money" to mean only United States currency, thus further reinforcing the legislative policy against gambling on credit.

The change in Texas' public policy on gambling should not be described as an evolution but rather a revolution. With talk of a possible state lottery it appears more forms of gambling are becoming acceptable in this State. The result here may be legally justified, however it sends out a poor message to would be gamblers. Go on credit and the House takes the risk. Aubin had profited from a similar exception in *Aubin v. Hunsucker*, 481 S.W.2d 952 (Tex.Civ.App.Austin 1972), and once again avoids an obligation which was knowingly made.

As occasionally it occurs, an outcome which is unjust is not only legally valid but mandated. I therefore feel compelled to concur, but with the above mentioned explanations and frustrations.