United States Court of Appeals,

Fifth Circuit.

No. 93-2878.

CARNIVAL LEISURE INDUSTRIES, LTD., Plaintiff-Appellee,

v.

George J. AUBIN, Defendant-Appellant.

June 2, 1995.

Appeal from United States District Court for the Southern District of Texas.

Before JONES, DUHÉ and STEWART, Circuit Judges.

STEWART, Circuit Judge:

This appeal involves the issue of whether an unpaid gambling debt, which we previously held to be unenforceable as against Texas public policy, can be used to support an action for fraud against the gambler who was extended the credit by a casino. We conclude that it cannot under the facts as presented in this case.

*Facts and Procedural History*

As indicated above, this is not the first time these litigants have been before us concerning this $25,000, eight-year dispute. The first hand in this controversy was played in *Carnival Leisure Industries, Ltd. v. Aubin,* 938 F.2d 624 (5th Cir.1991) (*Aubin I* ). Our opinion today constitutes a final disposition of the case.

During a January 1987 visit to the Bahamas, George Aubin, an astute businessman, frequent gambler, and Texas resident, visited Cable Beach Hotel and Casino, which was owned and operated by Carnival Leisure, a Bahamian corporation, for fun and frolic. After gambling away all the money he had brought to the casino,

Aubin asked that credit be extended to him so that he could continue gambling. The casino issued six "markers" to Aubin, which he signed, totaling $25,000.[1] Markers may be used by a patron to obtain food, beverages, souvenirs, or lodging at the casino. However, it is undisputed that in this case Aubin obtained $25,000 in gambling chips with his markers.

Aubin contends that he signed markers which did not contain the name of his Houston bank, his account number, the date, etc. He contends that the casino added this information to the markers before presenting them for payment. He denies that he had authorized the completion or presentation of the markers for payment. The forms signed by Aubin contained the following language in small type:

> I represent that I have received cash for the above amount and that said amount is on deposit in said financial entity in my name, is free and clear of claim and is subject to this check and is hereby assigned to payee, and I guarantee payment with exchange and costs in collecting.

Notwithstanding this language, it is undisputed that Aubin did not receive "cash" in exchange for signing the markers: He received $25,000 in gambling chips. It is also undisputed that, at

---

[1]A marker is a preprinted form, resembling a bank check or draft, that a gambler with preapproved credit signs while on the casino floor in order to obtain tokens or chips to play a casino game. If the player wins, he can redeem the marker with an equivalent amount of chips, and he can then exchange the remainder of the chips for cash. A losing player can redeem the marker with any remaining casino chips he may have, and pay the balance with cash or by giving a personal check. If the marker is not paid within 30 days by cash, check or casino chips, the casino presents the marker for payment, as a check or draft, to the bank designated by the player on the initial application for casino credit.

the time Aubin signed the markers, he did not have the $25,000 on deposit at his Houston bank.

Luck was not a lady to Aubin;  he lost the entire $25,000 playing blackjack.  However, having been bested in the card game, Aubin nonetheless beat the casino to the draw:  when Aubin did not redeem the markers within 30 days and the drafts were presented for payment at Aubin's Houston bank, the casino learned, much to its consternation, that he had stopped payment on the bank drafts.

After unsuccessful collection attempts, Carnival Leisure sued Aubin to enforce the debt in the United States District Court for the Southern District of Texas.[2]  Carnival later amended its petition to allege fraud, conversion, and equitable estoppel as well.  The district court granted Carnival's motion for summary judgment, finding that the debt was enforceable under Texas law because public policy in that state had changed and now favored enforcement of gambling debts.  Aubin decided to spin the appellate wheel and take a chance that this court would disagree.  We did.

In *Aubin I,* Judge Garwood, writing for the panel, concluded that although public policy in Texas may have shifted with regard to gambling, as evidenced by the enactment of statutes legalizing certain forms of gambling, there was a continued public policy in the Lone Star State which disfavors gambling on credit.

---

[2]Although the amount in controversy is only $25,000 in this diversity case, federal court jurisdiction is proper because suit was filed in 1987, prior to the effective date of the amendment to 28 U.S.C. § 1332, which raised the minimum jurisdiction amount from $10,000 to $50,000.  That 1988 amendment applies only to actions instituted on or 180 days after November 19, 1988.

Accordingly, we reversed the district court's grant of summary judgment in favor of Carnival and remanded to the district court "for further proceedings consistent with this opinion." *Ibid* at 626.

On remand, the district court indicated its intention to dismiss Carnival's case, and invited briefs on the issue of whether Carnival's fraud claims were barred by Texas public policy. The district court concluded that the fraud claim was not barred by public policy, nor by the law of the case, and set the matter for trial. After a bench trial, the district judge concluded in *Carnival Leisure Industries, Ltd. v. Aubin,* 830 F.Supp. 371 (S.D.Tex.1993), that although the gambling debt itself was unenforceable under this court's mandate, Carnival nonetheless could recover against Aubin for fraud. He found that, "[w]hen Aubin signed the drafts, he promised to pay Carnival by honoring the drafts," *Ibid* at 377, that Aubin never intended to honor the drafts when he signed them, and that the facts established fraud. The court entered judgment in favor of Carnival for $25,000 plus costs and attorney's fees. Once again, Aubin has rolled the dice and filed an appeal.

### Discussion

As we shuffle the deck for the final hand in this litigation, we begin with a review of the elements which must be proven by a plaintiff asserting a cause of action for fraud. Under Texas law, the elements of fraud are (a) a material misrepresentation of a present existing fact, (b) that was known to be false when made,

4

(c) that was intended to be acted upon (d) that was relied upon, and (e) that caused injury. *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 688 (Tex.1990).

In ruling in favor of Carnival on remand, the district judge held that Aubin committed fraud when he signed the six markers, finding that Aubin did not intend to repay them at the time he signed them because he stated that he considered the documents to be markers and not drafts. By this, Aubin meant that they were merely a means for the casino to keep track of how much he had lost and owed. Aubin subjectively predicted that it would not be necessary for the instruments to be presented for payment because he, like most gamblers, was ever the optimist and fully expected to win. The district judge considered Aubin's testimony in this regard as establishing that Aubin never intended to honor the drafts, thus supporting a finding of fraud. *Carnival,* 830 F.Supp. at 377. The district court also relied heavily upon the fact that Aubin was a former bank president who knew that a gambling debt was not always enforceable in Texas. *Ibid.*

Aubin has proceeded to ante up his best arguments in support of a reversal on the finding of fraud. We will "deal" with each of the parties' arguments under our *Erie*[3] duty to apply Texas law.

Aubin first intimates in brief that an action for the $25,000 may not be maintained against him because he "returned" the entire $25,000 in chips to Carnival by playing and losing at blackjack.

---

[3]*Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

We summarily reject this specious argument. To reverse on the basis that the debt was repaid by the loss of chips during play would defy common sense.

Aubin's next argument is based on the law of the case doctrine. The law of the case doctrine states that absent manifest error, or an intervening change in the law, an appellate court's decision of a legal issue, whether explicitly or by necessary implication, establishes the law of the case and must be followed in all subsequent proceedings in the same case. *Morrow v. Dillard,* 580 F.2d 1284, 1290 (5th Cir.1978).

Aubin submits that the panel opinion, which held that the gambling debt is unenforceable under Texas law, precludes a finding of fraud under the law of the case doctrine. Carnival disagrees. The thrust of Carnival's argument that law of the case does not preclude recovery for fraud centers around the fact that Aubin signed the markers when he knew they were unenforceable under the law of his home state. Carnival argues that the present issue is whether Texas public policy protects those who sign negotiable instruments with fraudulent intent, an issue it contends was not before this court and was not decided by "necessary implication" in *Aubin I.* Carnival claims that Aubin's signing of the markers constitutes a fraudulent misrepresentation which is actionable and which exists separate and apart from the determination that the debt is unenforceable. Carnival's arguments focus on its contention that the language quoted above on the face of the markers constituted a material misrepresentation by Aubin that

there were sufficient funds in his Houston bank account and that he would repay the debt.

We have carefully considered Aubin's arguments concerning the law of the case doctrine, but we do not find this very specific doctrine directly applicable and dispositive of the case due to the fact that an action to enforce a debt and an action for fraud are entirely separate causes of action with different elements which must be proven. A determination regarding the enforcement of a debt does not always decide by necessary implication the merits of a fraud claim. Thus, Aubin's law of the case argument does not add up to "21." However, because of the obvious similarity between the two causes of action at issue here, we nonetheless conclude that a reversal is in order, as explained below.

Aubin contends that the district court's finding of fraud is inconsistent with *Aubin I.* We agree. As noted above, after finding the debt unenforceable, the panel in *Aubin I* remanded this case back to the district court for "further proceedings consistent with this opinion." *Carnival Leisure Industries, Ltd. v. Aubin, supra,* 938 F.2d at 626. Aubin contends that the district judge's order holding him liable for fraud is entirely *inconsistent* with this court's prior opinion and should be reversed.[4] He argues that our affirmance of the district court's subsequent finding of fraud

---

[4]Carnival, of course, has a different view. Carnival contends that, had the panel intended to preclude recovery by the casino against Aubin on a theory of fraud, it would not have remanded the case. We disagree. The panel was presented with the single issue of whether gambling debts are enforceable within the State of Texas, which it decided. The panel properly remanded rather than rendering judgment.

7

would amount to little more than a thinly veiled end-run around this court's previous mandate. Without embracing Aubin's football analogy in this gambling case, we nonetheless conclude that the instant judgment is infirm.

Although Carnival's fraud claim is too dissimilar from the suit to enforce the debt for law of the case purposes, we nonetheless are convinced that there is sufficient overlap between the two claims such that we cannot allow the fraud claim and still remain true to *Aubin I.* As *Aubin I* made clear, there is a continued strong public policy in Texas against enforcement of gambling debts. For us to allow recovery against Aubin on an otherwise unenforceable gambling debt under a theory of fraud, when in fact the only real allegation of misrepresentation was that Aubin signed the markers knowing they were unenforceable in his home state (by operation of law), would require that we recognize an exception to Texas public policy that does not exist. We cannot in good conscience render an opinion which would do violence to *Aubin I.*

In considering whether the district court's finding of fraud is inconsistent with *Aubin I,* we have carefully researched the Texas jurisprudence to determine whether any Texas court has ever allowed an action for fraud to be maintained against a gambling debtor in spite of the unenforceable nature of the underlying debt. We have found no such case. The only Texas case in which a cause of action for fraud is even mentioned in connection with a gambling debt is *Gulf Collateral, Inc. v. George,* 466 S.W.2d 21

8

(Tex.Civ.App.1971), wherein it was merely stated that fraud had been asserted as an alternative cause of action, without a discussion of the disposition of the claim.[5] In light of our *Erie* duty in diversity cases to merely *apply* the law as we conclude a Texas state court would, rather than *make* law, we cannot uphold the finding of fraud when no state court has ever allowed such a claim as an alternative basis for recovery on an otherwise unenforceable gambling debt. We are convinced that a Texas court would not allow such a claim, and for us to do so would be violative of *Erie,* as well as inconsistent with *Aubin I.*[6] In urging us to affirm, Carnival has asked us, in effect, to stretch Texas law into an unknown and unexplored frontier. We decline to embark on such a course. "Litigants who reject a state forum in order to bring suit in federal court under diversity jurisdiction should not expect that new trails will be blazed." *Ryan v. Royal Ins. Co. of America,* 916 F.2d 731, 744 (1st Cir.1990).

Moreover, we also point out that the facts of this case particularly militate toward our conclusion. Carnival's complaint of fraud does not stem from the fact that Aubin signed the markers nor from the fact that he stopped payment on the drafts. Carnival sued Aubin because he has not otherwise paid the gambling debt.

---

[5]Recognizing that Texas is a common law state, we even looked to the case law in other jurisdictions in search of a case with similar facts. We found none. Thus, it does not appear that a single court has ever maintained such an action for fraud in the face of an otherwise unenforceable gambling debt.

[6]Because we are convinced that no Texas court would allow a cause of action for fraud under these facts, we find it unnecessary to certify the question to the Texas Supreme Court.

Had Aubin paid the money back, undoubtedly these litigants would not be before us today. Under Texas law, Aubin is not obligated to pay the gambling debt. Thus, the unenforceability of the gambling debt is what gives rise to Carnival's "loss," and this occurred by operation of law, not because of anything Aubin did or did not do. Moreover, any alleged wrongdoing or misrepresentation on the part of Aubin is so inextricably interwoven with the underlying gambling debt, which *Aubin I* declared to be unenforceable, that to uphold the district court's finding of fraud would render our opinion utterly inconsistent with *Aubin I.* The district court's decision amounted to a back-door enforcement of the gambling debt. This point is made particularly clear when we consider that the amount of damages awarded by the district court on the fraud claim—$25,000—is exactly the same as the sum of the checks which *Aubin I* held to be unenforceable. Thus, we reject Carnival's argument that the district court's determination was consistent with *Aubin I.*

To Carnival's other arguments contending that Aubin should be liable for fraudulently signing the negotiable instrument, we likewise say "no dice." Thus, Aubin has hit the jackpot and Carnival craps out.

*Conclusion*

Now that the chips are down and we must enter our decision, we conclude that Aubin's arguments are trump: we REVERSE the district court and RENDER judgment in favor of Aubin.

10